# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **T.W. and K.W. as Parents and Legal** | ) | **Case No. 1:18-cv-668** |
| **Guardians of JANE DOE, a Minor** | ) | |
| **c/o COOK & LOGOTHETIS, LLC** | ) | **Judge Timothy S. Black** |
| **30 Garfield Place, Suite 540** | ) | |
| **Cincinnati, OH 45202** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FINNEYTOWN LOCAL SCHOOL** | ) | |
| **DISTRICT** | ) | |
| **8916 Fontainebleau Terrace** | ) | |
| **Cincinnati, OH 45231** | ) | **MOTION FOR PRELIMINARY AND** |
| | ) | **PERMANENT INJUNCTION WITH** |
| **Defendant.** | ) | **SUPPORTING MEMORANDUM** |
| | ) | |

Plaintiff moves this Court, pursuant to Fed. R. Civ. P. 65(b), for an order preliminarily and permanently enjoining Defendant (1) from placing the three main perpetrators of the sexual harassment suffered by Plaintiff Jane Doe in any of her classes; (2) to publish the name and contact information for its Title IX coordinator, and to post the coordinator's name and contact information in a conspicuous location on its website; (3) to revise its Title IX policy and procedure to include a fixed complaint reporting process directing students to follow the same steps for each incident of harassment; (4) to revise its Title IX policy and procedure to include the use of a standardized complaint report form, a standardized investigative procedure, and an incident disclosure provision; (5) to revise its Title IX policy and procedure to include a mandatory progressive discipline provision for all substantiated or confirmed reports of harassment, discrimination, or bullying; (6) to revise its Title IX policy and procedure to include the release to a student-victim's parents a report regarding investigative findings, disciplinary, preventative, and remedial steps

taken after it has substantiated or confirmed reports of harassment, discrimination, or bullying consistent with student privacy rights under 20 U.S.C. § 1232 and R.C. § 3319.321; (7) to revise its Title IX policy and procedure to require that all substantiated or confirmed misconduct be reported to the Title IX coordinator, school principal, Ohio Department of Education, and the U.S. Department of Education, Office for Civil Rights, as required by law; (8) to revise its Title IX policy and procedure to require notice to the parents or guardians of all students involved in any substantiated or confirmed misconduct covered by Title IX; and (9) to publish and distribute to all FLSD administrators, faculty, staff, students, parents, and guardians its revised Title IX policy and complaint procedure and to post it in a conspicuous location on Defendant's website.

As explained in the Complaint filed in this action, the Defendant's conduct violates federal and state law, and the injunctive relief sought will prevent plaintiff from suffering further immediate and irreparable harm. The grounds for this Motion are set forth more fully in the following Memorandum in Support. Given the circumstances, no bond should be required. A proposed Order is tendered herewith.

Respectfully Submitted,

/s/ Bennett P. Allen
Bennett P. Allen (96031)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
P: (513) 287-6992
F: (513) 721-1178
ballen@econjustice.com

*Trial Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **T.W. and K.W. as Parents and Legal Guardians of JANE DOE, a Minor c/o COOK & LOGOTHETIS, LLC 30 Garfield Place, Suite 540 Cincinnati, OH 45202** | ) ) ) ) ) | **Case No. 1:18-cv-668** **Judge Timothy S. Black** |
| **Plaintiffs,** | ) ) ) | |
| **v.** | ) ) | |
| **FINNEYTOWN LOCAL SCHOOL DISTRICT 8916 Fontainebleau Terrace Cincinnati, OH 45231** | ) ) ) ) ) | **MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR** |
| **Defendant.** | ) ) ) | **INJUNCTIVE RELIEF** |

## I.   INTRODUCTION

Plaintiffs T.W. and K.W. are parents and legal guardians of Plaintiff Jane Doe a minor child and rising seventh-grade student in Defendant Finneytown Local School District ("FLSD" or "Defendant"). Plaintiffs bring this action pursuant to Title IX of the Education Amendments of 1972 ("Title IX") 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 1983, and pursuant to Title 27 and Title 33 of the Ohio Revised Code ("R.C."), to compel Defendant to revise and distribute its Title IX policies and procedures, and to recover compensatory damages, punitive damages, attorney's fees and costs, and any other relief this Court deems just and proper.

To prevent further irreparable harm, Plaintiffs respectfully request an order from this Court enjoining Defendant (1) from placing the three main perpetrators of the sexual harassment suffered by Plaintiff Jane Doe in any of her classes; (2) to publish the name and contact information for its Title IX coordinator, and to post the coordinator's name and contact information in a conspicuous

location on its website; (3) to revise its Title IX policy and procedure to include a fixed complaint reporting process directing students to follow the same steps for each incident of harassment; (4) to revise its Title IX policy and procedure to include the use of a standardized complaint report form, a standardized investigative procedure, and an incident disclosure provision; (5) to revise its Title IX policy and procedure to include a mandatory progressive discipline provision for all substantiated or confirmed reports of harassment, discrimination, or bullying; (6) to revise its Title IX policy and procedure to include the release to a student-victim's parents a report regarding investigative findings, disciplinary, preventative, and remedial steps taken after it has substantiated or confirmed reports of harassment, discrimination, or bullying consistent with student privacy rights under 20 U.S.C. § 1232 and R.C. § 3319.321; (7) to revise its Title IX policy and procedure to require that all substantiated or confirmed misconduct be reported to the Title IX coordinator, school principal, Ohio Department of Education, and the U.S. Department of Education, Office for Civil Rights, as required by law; (8) to revise its Title IX policy and procedure to require notice to the parents or guardians of all students involved in any substantiated or confirmed misconduct covered by Title IX; and (9) to publish and distribute to all FLSD administrators, faculty, staff, students, parents, and guardians its revised Title IX policy and complaint procedure and to post it in a conspicuous location on Defendant's website.

## II.     BACKGROUND

The sexual harassment began when Plaintiff was in fifth grade. Male classmates made crass jokes and comments of a sexual nature, and dared each other to touch female classmates' breasts and buttocks. Plaintiff reported the misconduct, but school officials never did more than send the perpetrators out of the classroom.

Once in sixth grade, the same boys Plaintiff complained about in fifth grade resumed their vulgar jokes and comments, which were now accompanied by lewd gesticulations, grunting, moaning, mimicking oral sex, and sharing pornographic images and video.  Between November 1, 2017 and March 7, 2018, when she was sexually assaulted, Plaintiff reported harassment over a dozen times to at least a half-dozen school officials.  Defendant's response was inconsistent, if Defendant responded at all.

Prior to November 2017, Plaintiff was a confident, outgoing, and successful student who participated in choir, theater, cheerleading, and mentor group among other extracurricular activities.  By June 1, 2018, the harassment was sufficiently severe and pervasive such that Plaintiff had to miss school, leave class early, or leave school early almost 40 times.

The Defendant spoke to the perpetrators and held class-wide meetings regarding sexual harassment, but issued no discernable discipline and took no specific steps as to the perpetrators identified repeatedly by the Plaintiff.  Not surprisingly, Defendant's efforts to stop the harassment and prevent its recurrence were unsuccessful.  Nonetheless, Defendant continued using the same methods, even though Defendant was on notice that those methods were ineffective.

On March 7, Plaintiff's worst fears were realized when one of the boys who had been repeatedly harassing her approached her, forced her up against a desk, and intentionally rubbed his genitals against the side of her leg and against her rear end.  The SRO said he did not consider it to be an assault, and disclosed that he had done nothing more than speak to the perpetrator despite having received reports of sexual harassment from more than one teacher regarding this same perpetrator and his friends.

On March 9, the dean of students said he wanted to "get this on record," and he presented Plaintiff with two options: (1) she could report the harassment and assault anonymously, or (2) she

3

could enter into a cease-and-desist order mutually binding on her and her victimizers. The dean informed Plaintiff that the parties were not to have any contact with each other, and that she would be subject to discipline if she violated the order. He also informed Plaintiff the order was not to be disclosed – by the boys or by her – to any other students.

By the time Plaintiff returned to class following her meeting with the dean, the boys had already told their friends about the order – despite the prohibition on disclosure. Their friends then began harassing the Plaintiff yelling across the room, "He didn't touch you," "You don't even have boobs," and calling her a snitch. The teacher did nothing more than urge the class to "settle down." Plaintiff tried to ignore the harassment, but she could not take it and ran out of the room crying.

Plaintiff went immediately back to the dean of students and told him she was now being harassed not by the boys who signed the cease-and-desist order, but by their friends. Incredibly, the dean told her there was "nothing [he] could do" because the boys harassing her had not violated the order. Plaintiff was shattered. She went to the SRO's office crying and hyperventilating, and she called her dad to come pick her up.

When Plaintiff's father arrived, he tried to meet with Dean of Students Mr. Muchmore, but Mr. Muchmore refused to see him. Once back home Plaintiff cried unconsolably, she continued hyperventilating, and was soon suffering from her first panic attack.

Between March 9 and April 6, Plaintiff's missed nine days of school, and had to leave before noon three times, due to overwhelming anxiety. On March 14, Plaintiff was diagnosed with general anxiety disorder (GAD). When she returned to school on March 15, someone told her to kill herself, or that maybe someone would kill her. She went to the nurse and reported feeling nauseous, that her heart was racing, and that she was having difficulty breathing. Plaintiff's father picked her up at 10:15 a.m.

On April 6, 2018, Plaintiff's parents met with Principal Jennifer Dinan, Assistant Principal Marlo Thigpen, Counselor Emily Styles, Dean Muchmore, and School Social Worker Cathy McNair. As if first learning of a problem that had just come to light, the principal asked, "Would it help for [Plaintiff] and the boys to sit down together and talk it out?" Plaintiff's parents were outraged. Mr. Muchmore and Ms. Styles agreed it was not a good idea.

During the April 6 meeting, Plaintiff's parents described the severity of the situation and how it was affecting their daughter's health. They explained their family physician diagnosed Plaintiff as now suffering from GAD that causes panic attacks brought on by stressors related to the sex-based harassment. They shared their doctor's explanation that Plaintiff's body was reacting adversely to the events at school, and that the doctor taught Plaintiff breathing techniques and had prescribed Prozac.

After detailing this information, the only proposition Defendant came up with was to move Plaintiff to another class. Defendant never proposed moving the perpetrators to another class. And citing the perpetrators' rights to privacy, Defendant never disclosed whether any of them had been disciplined, or whether the boy who assaulted Plaintiff had been disciplined.

Immediately following the April 6 meeting, Plaintiff's parents met with the school counselor to discuss Plaintiff's Section 504 Plan, which was initially implemented to address an unrelated illness. Plaintiff's father explained that because of the ongoing harassment Plaintiff now suffers from GAD causing panic attacks almost every morning before school. Dismissing the connection between the harassment and the anxiety, the counselor said, "That's all in the past, and we need to move forward." It was agreed that as part of the 504 Plan, Plaintiff would be permitted to leave school at lunch to avoid the perpetrators in her afternoon classes, further depriving Plaintiff of access to Defendant's educational programs and activities.

5

Plaintiff did not attend school on April 11, 12, or 13 due to panic attacks and physical illness caused by the sexual harassment and assault. On April 14, Plaintiff's father brought her to Cincinnati Children's Hospital Medical Center (CCHMC) where she was admitted the same day for dehydration and ongoing involuntary vomiting. The hospital performed an endoscopy and inserted a feeding tube. The endoscopy showed no signs of this being an event related to her other illness, nor did it show any other physical ailments. The pain after the endoscopy was so severe Plaintiff required several doses of fentanyl.

Even with the feeding tube, Plaintiff was unable to keep anything down. Plaintiff remained in-patient at Children's for eight days. After lengthy discussion of the background and symptoms with Children's medical staff, doctors diagnosed her on April 17 with rumination[1] caused by the sex-based harassment and assault at school, which also caused Plaintiff's gastrointestinal track to shut down in response to "fight or flight" stressors.

In the days that followed, Plaintiff's pain and stomach distention worsened, which led the hospital to discover fully impacted stool from her gastrointestinal tract having shut down. When laxatives finally started working, Plaintiff suffered stomach cramping, burning, and nausea. She lost control of her bowels, which led to frequent accidents adding to her humiliation.

Plaintiff met with a CCHMC therapist several times, but she remained unable to hold down any food until Friday, April 20, 2018. Plaintiff was released from hospital April 21 and shortly thereafter began reporting to her parents suicidal ideation. She remains unable to fall asleep alone because she continues to have frightening thoughts of harming herself.

Plaintiff continued to suffer panic attacks at home in the middle of the night or before school, in the car on her way to school, or after arriving on campus. On May 3, Plaintiffs parents

---

[1] The focused attention on the symptoms of distress; rumination is associated with anxiety and stress.

and legal representatives met with Defendant's legal representative, superintendent, and Title IX coordinator who admitted to having become involved only days earlier on April 30. On May 10, Plaintiff's mother spoke with a representative at Beech Acres Parenting Center who said she received referral paperwork indicating only that Plaintiff "struggles with anxiety and going to school." The representative had not been told about the sexual harassment or assault.

On May 14, Defendant arranged for Plaintiff to undergo "home instruction" on campus but away from other students. On May 21, the home instructor advised Plaintiff's mother she had not been told about any sexual harassment or assault. Defendant told instructor only that Plaintiff was having anxiety about her schoolwork and coming to school.

Plaintiff was forced to finish sixth grade in summer school, and the panic attacks caused by being on campus were less severe and more manageable because she knew the perpetrators were not there with her. However, on June 4, Plaintiff encountered one of the perpetrators in a grocery-store aisle and immediately suffered a panic attack that forced her to leave.

Plaintiff continues to suffer anxiety so severe that it causes vomiting and prevents her from sleeping. Her physician has advised the anxiety is physically harming Plaintiff and adversely affecting her quality of life, and that her parents should consider anti-anxiety medication. As of June 29, 2018, Plaintiff remains able to hold down only broth, she has begun taking Prevacid to treat the damage to her stomach, and has taken Zofran to treat her nausea.

## III. LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure gives the Court discretion to grant injunctive relief to preserve the relative positions of the parties until a trial on the merits can be held. *Tennessee Scrap Recyclers Association v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009). In considering whether to issue an injunction, a court considers the following factors: (1) whether the

movant has demonstrated a likelihood of success on the merits; (2) whether the movant would suffer irreparable harm absent the injunction; (3) whether granting the injunction would cause substantial harm to others; and (4) whether granting the injunction would serve the public interest. *Id*.

To satisfy its burden, the movant must show that the irreparable harm is both certain and immediate, rather than speculative or theoretical. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 945 F.2d 150, 154 (6th Cir.1991). The movant must also establish more than mere monetary injury. The possibility that adequate compensation or other remedies will be available in the ordinary course of litigation weighs heavily against claims of irreparable harm. *Sampson v. Murray,* 415 U.S. 61, 90 (1974). However, if the plaintiff's injury is not fully compensable from monetary damages, the harm caused by the denial of a preliminary injunction is irreparable. *Overstreet v. Lexington-Fayette Urban County Government*, 305 F.3d 566 (6th Cir.2002).

## IV.    ARGUMENT

Plaintiffs' motion for a preliminary and permanent injunction should be granted because (1) the Plaintiffs will likely succeed on the merits in that it can hardly be disputed Defendant has failed to comply with Title IX notwithstanding any dispute regarding "deliberate indifference"; (2) Plaintiff is certain to suffer immediate and irreparable psychological harm absent injunction; (3) enjoining the Defendant to place Plaintiff in a particular class, and to revise and publish its Title IX policy and procedures, would not cause substantial harm; and because (4) enjoining the Defendant to revise and publish its Title IX policies and procedures serves the best interests of FLSD's approximately 1,500 students and their parents.

### A.  Success on the Merits

8

1.  *Plaintiff is Likely to Succeed on the Merits of Her Title IX Claims in that Defendant's Failure to Comply with the Statute's Administrative Requirements Constitutes A Per Se Violation Notwithstanding Any Dispute Regarding "Deliberate Indifference."*

The law requires Defendant to designate at least one employee to coordinate its efforts to comply with and carry out its responsibilities under Title IX including the investigation of complaints. *See* 34 C.F.R. § 106.8(a). The law also requires Defendant to distribute a notice of non-discrimination to all students, parents, and guardians of elementary and secondary school students. *See* 34 C.F.R. §§ 106.8 and 106.9. The Defendant must also notify all students and employees of the name or title, office address, telephone number, and email address of its Title IX coordinator, and notify all students and employees that questions may be referred to its Title IX coordinator, and this information must be included in Defendant's notice of nondiscrimination. *See* Id.

In addition, the Defendant's non-discrimination notice must be included in any bulletins, announcements, publications, catalogs, application forms, or recruitment materials. *See* 34 C.F.R. §§ 106.8 and 106.9. And finally, content of the notice must be complete and include current information. Id.

Regarding harassment complaints, the law requires Defendant to adopt and publish grievance procedures providing for prompt resolution of student and employee complaints. In addition, the Defendant must ensure that members of the school community are aware of their rights under Title IX and know how to file a complaint alleging a violation of Title IX. *See* 34 C.F.R. § 106.8(b).

Here, the Defendant has failed to comply with any of the above-listed requirements other than the appointment of a Title IX coordinator. However, the Defendant's coordinator was not involved in the investigation of Plaintiff's complaints, nor was the coordinator involved in

otherwise carrying out the Defendant's Title IX duties, until Monday, April 30, 2018 almost six months after Plaintiff first reported being harassed.

The Defendant failed to distribute a non-discrimination notice, or otherwise advise students, prospective students, parents, or employees of the coordinator's identity. Plaintiff's parents could not identify the coordinator in any correspondence or publications from the school, nor could any employees with whom the parents met on April 6 identify the Defendant's Title IX coordinator.

The Defendant failed to adopt and publish grievance procedures providing for prompt resolution of complaints. The Defendant also failed to ensure that members of the school community were aware of their rights under Title IX, or that they were aware of how to file a complaint alleging a violation of Title IX. Each time Plaintiff reported harassment or assault, she received a different response and was sent to a different school official.

Defendant's failure to comply with Title IX, particularly its failure to adopt a grievance procedure and to advise the school community of their rights, and its haphazard approach to the Plaintiff's complaints, constitutes a *per se* violation of Title IX and entitles Plaintiff to the injunctive relief sought herein.

> 2. *Plaintiff is Likely to Succeed on the Merits of Her Title IX Claims in that Defendant's Continued Use of Inadequate and Ineffective Remedial Methods Constitutes "Deliberate Indifference."*

In cases involving student-on-student sexual harassment, a school district is liable if it acted in violation of Title IX by (1) remaining "deliberately indifferent" (2) to known harassment that (3) is so severe, pervasive, and objectively offensive that it deprives the victim of access to educational opportunities or benefits provided by her school district. See *Davis v. Monroe County*

*Bd of Educ.*, 526 U.S. 629, 642 (1999). "[T]he deliberate indifference must, at a minimum, 'cause [students] to undergo' harassment or 'make them liable or vulnerable' to it.'" *Id*., at 645.

A plaintiff demonstrates deliberate indifference "where the [district's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id*., at 648. "[W]here a school district has knowledge that its efforts to remediate are ineffective, and it continues to use those same methods to no avail, such district has failed to act reasonably in light of the known circumstances," *Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 261-62 (6th Cir. 2000) ("[O]nce [the district] had knowledge that its response was inadequate, it was required to take further reasonable action in light of the circumstances to avoid new liability."), even if its remedial efforts included anti-harassment presentations and or discipline that was effective as to several perpetrators. *See Patterson v. Hudson Area Sch.*, 551 F.3d 438 (6th Cir. 2009).

In *Davis*, for five months the victim was harassed by a classmate who threatened to touch her breasts and genital area and made statements such as, "'I want to get in bed with you,'" and "'I want to feel your boobs.'" 526 U.S. at 633. The harassing conduct also included the perpetrator placing a door stop in his pants and acting in a sexually suggesting manner toward the victim, and at one point rubbing his body against the victim in a way she felt was sexual. *Id*., at 634. The harassment was not limited to the victim who filed suit. At one point, a group of female students sought to discuss the matter with their principal, but their request was denied.

The victim's grades declined, and her father discovered a suicide note. Yet the school district never disciplined the perpetrator. When the victim's mother asked the principal what action would be taken, all he said was, "'I guess I'll have to threaten him a little bit harder.'" No effort was made to separate the perpetrator from the victim, nor had the district established a sexual

11

harassment procedure or trained its staff in how to handle or investigate allegations of harassment. *Davis*, 526 U.S. at 634-35.

Here, Plaintiff suffered sexual harassment beginning in fifth grade. When she reported the harassment, her teachers never did more than send the perpetrators out of the classroom. Not surprisingly, the harassment worsened in sixth grade, with misconduct over a seventh-month period that was all-but identical to that described in *Davis*.

As far back as November 2017, the Defendant was on notice of the harassment. By December 2017, Defendant was on notice that the harassment was sufficiently severe such that Plaintiff had to leave school, preventing her from participating in and benefiting from the Defendant's educational programs and activities.[2] Between November 1, 2017 and March 7, 2018, when she was sexually assaulted, Plaintiff reported harassment at least a dozen times to at least a half-dozen different school officials. The March 7 assault again forced Plaintiff to leave school early, something she was forced to do six times between January 1 and April 30, 2018.

In *Vance*, the Court found school officials failed to reasonably respond where they did nothing more than "talk to the offenders," even though officials were on notice that the harassment increased after each "talking to." 231 F.3d at 262. In *Patterson*, perpetrators were disciplined each time the victim reported an incident, and those perpetrators ceased harassing the victim. 551 F.3d at 446. The school also held class-wide programs regarding harassment and bullying. *Id*. Nonetheless, the harassment continued, and the Court held that "because [the school] had knowledge that its methods for dealing with the overall student-on-student sexual harassment of [the victim] were ineffective, but continued to employ only those methods," a fact finder might conclude there was deliberate indifference. *Patterson*, at 450.

---

[2] "It is not necessary, however, to show physical exclusion to demonstrate that students have been deprived... of an educational opportunity on the basis of sex." *Davis v. Monroe County Bod of Educ.*, 526 U.S. 629, 651 (1999).

Here, the Defendant purports to have talked to the perpetrators. However, as far back as January 2018, Defendant knew its efforts were inadequate when Plaintiff along with two friends went as a group to report worsening misconduct to a teacher who said she would report it to the SRO. However, no one ever contacted the Plaintiff or her friends to ask about the harassment. Instead, the SRO spoke to Plaintiff's entire class about sexual harassment.

After that class-wide meeting, the harassment only got worse, so again the three girls reported the harassment, and again named the boys who were engaging in the behavior. Still, no one contacted Plaintiff, or either of her friends, to question them. Instead, the week ending January 26, 2018, Defendant held a class-wide meeting to discuss sexual harassment. The harassment stopped for a couple days, but then resumed worse than before.

On March 7, when one of the boys approached the Plaintiff and rubbed his genitals against her, she reported the incident immediately to the SRO who, instead of asking for the perpetrator's name and for details regarding the assault, asked the Plaintiff to reenact what happened, then asked several times whether the perpetrator "liked" her.

Plaintiff could not return to class. Her teacher allowed her to sit in the hallway sobbing, and Plaintiff's grandmother had to come pick her up. The perpetrator was not even removed from class – the SRO and staff did nothing even though Plaintiff had clearly identified the perpetrator. They did not even contact Plaintiff's parents to notify them she had been assaulted. This was the second time the harassment forced Plaintiff to leave school early, and after she returned home her mother called the school immediately and left a message.

The following day, an SRO returned mother's call and told her he was aware of the incident but did not consider it to be an assault. The SRO disclosed that he had done nothing more than

speak to the perpetrator despite having received reports of sexual harassment from more than one teacher regarding this same perpetrator and his friends.

That same day, the dean of students said he wanted to "get this on record" and told Plaintiff she could report the harassment and assault anonymously, which had already been proven ineffective, or she could sign a cease-and-desist order mutually binding on her and her victimizers. Treating the Plaintiff as though her conduct was somehow equivalent to her victimizers not only demonstrates a shocking lack of common sense and good judgement, it is also retaliatory in that it effectively subjects the victim to the risk of punishment for reporting harassment.[3]

By the time Plaintiff returned to class, the boys' friends began harassing the Plaintiff, but the teacher did nothing more than urge the class to "settle down."  Plaintiff ran out of the room crying and went immediately back to the dean of students.  Incredibly, the dean told her there was "nothing [he] could do."  He could have disciplined the perpetrators for violating the order's non-disclosure provision.

Plaintiff went to the SRO's office crying and hyperventilating, but the SRO did nothing more than permit her to call dad to come pick her up.  When Plaintiff's father arrived, he tried to meet with the dean, but the dean refused to see him.  Once back home, Plaintiff continued hyperventilating, and was soon suffering from her first panic attack.

On April 6, 2018, Plaintiff's parents met with several school officials and described the severity of the situation and how it was affecting their daughter's health.  After detailing this information, the only proposition Defendant came up with was to move *Plaintiff* to another class. Defendant never proposed moving the perpetrators to another class.  Citing the perpetrators' rights

---

[3] In *SurvJustice, Inc.* et al. *v. Devos* et al., case number 3:2018cv00535, U.S. District Court, Northern District of California, San Francisco Division, Plaintiffs argue mutual no-contact orders are a form of retaliation when there is no basis to place the order against victim-complainants other than the fact that they made a Title IX complaint.

to privacy, Defendant never disclosed whether any of them had been disciplined, or whether the boy who assaulted Plaintiff had been disciplined.[4]  And instead of removing the wrongdoers, Defendant permitted Plaintiff to leave school at lunch to avoid afternoon encounters with them.

Defendant made Plaintiff vulnerable to harassment, and caused her to undergo harassment, particularly with its use of a cease-and-desist order, but also by failing to adopt a grievance procedure, failing to involve its Title IX coordinator, failing to train faculty and staff in how to handle and investigate harassment complaints, and by failing to take further action after learning that its efforts to remediate – talking to the perpetrators and holding class-wide meetings – were ineffective.  Given the circumstances, Defendant's response was clearly unreasonable in light of the known effect the harassment was having on Plaintiff's ability to be at school.

> 3. _Plaintiff is Likely to Succeed on the Merits of Her Constitutional Claims in that Defendant's Failure to Comply with Title IX Violated Her Right to Due Process and Equal Protection._

A student's fundamental right to personal security and bodily integrity is a liberty interest protected by the Due Process Clause of the Constitution, *see Doe v. Ohio State Univ.*, 136 F. Supp. 3d 854, 868 (S.D. Ohio 2016) *Doe v. Claiborne County*, 103 F.3d 495, 506 (6th Cir. 1996) *and Williams v. Paint Valley Local Sch. Dist.*, 400 F. 3d 360, 364 (6th Cir. 2005), and "no right is held more sacred, or is more carefully guarded." *Doe*, 103 F.3d at 506 (quoting *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250 (1891)).  A student's right to an education is a property interest.  *Goss v. Lopez*, 419 U.S. 565, 576 (1975); *see also Jaksa v. Regents of Univ. of Michigan,* 597 F. Supp. 1245, 1254 (E.D. Mich. 1984).

---

[4] "FERPA continues to apply in the context of Title IX enforcement, but if there is a direct conflict between requirements of FERPA and requirements of Title IX, such that enforcement of FERPA would interfere with the primary purpose of Title IX to eliminate sex-based discrimination in schools, the requirements of Title IX override any conflicting FERPA provisions." See *Revised Sexual Harassment Guidance*, U.S. Department of Education, Office for Civil Rights (January 2001) (citations omitted). Defendant is either unaware of this fact, or willfully ignored it.

To establish a procedural due process violation, the Plaintiff must show that (1) she had a life, liberty, or property interest protected by the Due Process Clause; (2) she was deprived of this protected interest; and that (3) the Defendant did not afford her adequate procedural rights prior to depriving her of the protected interest. *Doe*, 136 F. Supp. 3d at 865.

Distinct from procedural due process, substantive due process rights prohibit "(1) official acts that are unreasonable, arbitrary and cause a deprivation of a substantive right specified in the Constitution, or (2) official acts that may not take place no matter what procedural protections accompany them," that is – conduct so extreme that it "shocks the conscience." *Doe,* 136 F. Supp. 3d at 868 (quoting *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989)); *see also Daniels v. Williams*, 474 U.S. 327, 331 (1986). "'[O]nly the most egregious official conduct' shocks the conscience." *Doe,* 136 F. Supp. 3d at 868 (quoting *Cty. Of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Here, Plaintiff (1) had a liberty interest in personal security and bodily integrity, and a property interest in her education, both of which are protected by the Due Process Clause; (2) Plaintiff was deprived of her protected interests by sexual harassment and assault that eventually forced her to forego the benefit of Defendant's educational programs and activities; and (3) the Defendant's failure to comply with the administrative requirements of Title IX, specifically its failure to adopt a grievance or investigative procedure, denied Plaintiff adequate procedural rights prior to depriving her of these protected interests.

With respect to Plaintiff's substantive due process rights, this case involves several instances of egregious conduct by school officials. For example, when Plaintiff reported to an SRO that she had been assaulted by a classmate who rubbed his genitals against her, instead of documenting her complaint, the SRO treated Plaintiff as if she was overreacting and asserted that

the perpetrator may have done it because he "liked" her. The following day, another SRO told Plaintiff's mother he did not even consider the incident to be an assault, and that he would not be part of any disciplinary process despite having received complaints of similar misconduct from other students regarding the same perpetrator.

Having the Plaintiff sign a mutually binding cease-and-desist order also shocks the conscience. Plaintiff never engaged her victimizers in any back-and-forth teasing, yet for some reason she was made to sign an order subjecting her to the same discipline as her victimizers. It is outrageous for Defendant to have effectively subjected Plaintiff to the threat of discipline for reporting sexual harassment and assault.

In addition, Defendant has repeatedly denied and or downplayed the existence and severity of the harassment to which Plaintiff was subjected in a way that shocks the conscience. For example, in a meeting with administrators, Plaintiff's parents were told the harassment and assault were "in the past," and that they "need to move forward." Defendant proposed moving the victim to another classroom instead of moving the perpetrators because their parents would think it was unfair.

Finally, Defendant failed to advise third-party service providers of the harassment and assault to which Plaintiff was subjected. In its referral paperwork to Beech Acres, Defendant reported only that Plaintiff "struggles with anxiety and going to school." Defendant told Plaintiff's home-school instructor only that she had anxiety about going to school and her schoolwork. Plaintiff has previously never had a problem with her schoolwork. And the sexual harassment, assault, and bullying Defendant failed to mention much less deal with in an effective way is the only reason Plaintiff now has anxiety about going to school. It shocks the conscience for

17

Defendant to have withheld critical information from those responsible for helping Plaintiff overcome her trauma.

>    4.    _Plaintiff is Likely to Succeed on the Merits of Her Negligence Claims in that the Defendant Breached its Duty to Comply with R.C. § 3313._

Under the Ohio Revised Code ("R.C.") § 3313.666, Defendant had a duty to establish an anti-harassment and anti-bullying policy that (1) establishes a procedure for students to report misconduct; (2) establishes a procedure for documenting and responding to reported misconduct; (3) requires personnel to report misconduct to the school principal or other designated administrator; (4) requires parents or guardians of any student involved in the misconduct to be notified and have access to any written reports regarding the misconduct ; and that (5) establishes a disciplinary procedure for any student guilty of harassment, intimidation, or bullying.

The Defendant breached its statutory duty by failing to do any of the above.  Defendant's breach caused Plaintiff to suffer sexual harassment and assault that otherwise would not have occurred.   The harassment and assault caused Plaintiff to forgo classroom instruction and extracurricular activities thereby limiting her ability to participate in, and benefit from, the Defendant's educational programs and activities.  Defendant's breach has also caused Plaintiff pain and suffering in the form of humiliation, depression, and suicidal ideation.

## B.  Irreparable Harm

>    1.    _Absent Injunctive Relief Plaintiff Will Suffer Irreparable Psychological, Academic, and Professional Harm._

 "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury the movants will suffer." _Northeastern Ohio Coalition for Homeless & Service Employees International Union, Local 1199 v. Blackwell_, 467 F.3d 999, 1009 (6th Cir. 2006).  To meet her burden, Plaintiff must show that the irreparable harm is immediate, rather than

speculative or theoretical. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). "In addition, and of critical importance, 'the irreparable harm requirement contemplates the inadequacy of alternate remedies available to the plaintiff.'" *Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809, 818 (E.D. Mich. 2013) (quoting *Smith & Nephew, Inc. v. Synthes (U.S.A.)*, 466 F. Supp. 2d 978, 982 (W.D. Tenn. 2006)). "If a Plaintiff cannot get redress for [her] injuries through alternate legal remedies, it follows that [she] will suffer irreparable harm." *United States v. Miami Univ.*, 91 F.Supp.2d 1132, 1159 (S.D. Ohio 2000).

This Court has found irreparable harm where plaintiffs alleged that a suspension from school would harm their academic reputation, their ability to enroll at other schools, the timely completion of their degree, and their future career possibilities. *Marshall v. Ohio Univ.*, 2015 U.S. Dist. LEXIS 31272, at *25 (S.D. Ohio 2015) (citing *Boman v. Bluestem Unified Sch. Dist.*, 2000 U.S. Dist. LEXIS 5389 (D. Kan. 2000) and *Bhandari v. Trustees of Columbia Univ. in N.Y.*, 2000 U.S. Dist. LEXIS 3720, at *15-16 (S.D.N.Y. 2000)). And, research shows sexually victimized students are more likely to miss school, change residences, and have lower GPAs, creating long-term consequences for professional success and earning potential.[5]

Here, Plaintiff will suffer immediate harm the moment she returns to Defendant's campus without adequate assurances that she will be protected from the perpetrators of sexual harassment. Enjoining Defendant from placing the three main perpetrators in the same classroom as Plaintiff will go a long way toward providing adequate assurance. The harassment has already caused

---

[5] *See, e.g.,* Catherine Hill and Holly Kearl, *Crossing the Line, Sexual Harassment at School,* American Association of University Women, 2 (2011) (https://www.aauw.org/files/2013/02/Crossing-the-Line-Sexual-Harassment-at-School.pdf) *and* Victoria L. Banyard et al., *Academic Correlates of Unwanted Sexual Contact, Intercourse, Stalking, and Intimate Partner Violence: An Understudied but Important Consequence for College Students*, J. of Interpersonal Violence (June 21, 2017) (http://journals.sagepub.com/doi/10.1177/0886260517715022).

Plaintiff to miss school, and to suffer panic attacks whenever she stepped foot back on Defendant's campus, preventing Plaintiff from timely completing sixth grade.

There is no alternative legal remedy. Without the injunctive relief sought, Plaintiff will continue to suffer irreparable emotional and academic harm creating long-term consequences for her professional success and earning potential.

2. *Plaintiff Demonstrates a Likelihood of Success on the Merits of Her Constitutional Claims, and Therefore Irreparable Harm is Presumed with Respect to those Claims.*

The "denial of an injunction will cause irreparable harm if the claim is based upon a violation of the plaintiff's constitutional rights." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002). And the Plaintiff is entitled to a presumption of irreparable harm if she demonstrates a likelihood of success on her constitutional claims. *See, e.g., Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (recognizing that the loss of First Amendment rights, for even a minimal period of time, constitutes irreparable harm); *Spencer v. Blackwell*, 347 F. Supp. 2d 528, 537 (S.D. Ohio 2004) (finding irreparable harm where Ohio statute would impair right to vote); *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

Here, Plaintiff suffered a violation of her liberty interest in personal security and bodily integrity, as well as a violation of her property interest in an education. The violations Plaintiff suffered were caused by Defendant's failure to comply with Title IX, specifically its failure to adopt grievance and investigative procedures for complaints of sexual harassment.

Defendant's violation of Plaintiff's right to procedural due process also violated her property interest in an education in that Defendant failure to adequately address harassment forced Plaintiff to forego participation in Defendant's educational programs and activities.

In addition, Defendant's mishandling of Plaintiff's complaints violated her substantive due process rights with conduct so egregious that it shocks the conscience. Based on Defendant's *per se* violations of Title IX, and based on Defendant's clearly unreasonable conduct in light of the known circumstances, Plaintiff has demonstrated a likelihood of success on the merits of her constitutional claims and is therefore entitled to a presumption of irreparable harm.

## C. Substantial Harm to Others

No entity other than the Defendant will be harmed, and when balancing the irreparable harm to the Plaintiff against the financial harm to Defendant, this factor weighs in favor of the Plaintiff.

1. *Injunction will not Harm Others in that the Relief Sought is Limited to Pre-Existing Title IX Obligations and Pre-Existing Administrative Duties.*

Granting an injunction will not harm any entity other than the Defendant because the relief sought is limited to pre-existing Title IX obligations (1) to publish the name and contact information for its Title IX coordinator, and to post the coordinator's name and contact information in a conspicuous location on its website; (2) to revise its Title IX policy and procedure to include a standardized complaint reporting process directing students to follow the same steps for each incident of harassment and discrimination; (3) to revise its Title IX policy and procedure to include the use of a standardized complaint report form, a standardized investigative procedure, and an incident disclosure provision; (4) to revise its Title IX policy and procedure to include mandatory progressive discipline for all substantiated or confirmed reports of harassment, discrimination, or bullying; (5) to revise its Title IX policy and procedure to include the release to a student-victim's parents an investigative report; (6) to revise its Title IX policy and procedure to require that all substantiated or confirmed misconduct be reported to the Title IX coordinator, school principal, Ohio Department of Education, and the U.S. Department of Education, Office for Civil Rights; (7)

to revise its Title IX policy and procedure to require notice to the parents or guardians of all students involved in any substantiated or confirmed misconduct; and (8) to publish and distribute to all FLSD administrators, faculty, staff, students, parents, and guardians its revised Title IX policy and complaint procedure and to post the policy and procedure in a conspicuous location on its website.

Granting an injunction will not harm the Defendant because the additional relief sought is limited to pre-existing administrative duties. That is, Defendant's administrative duties require it to place students into various classes, and the relief sought would require Defendant to do nothing more than avoid placing the Plaintiff into any classes with the three main perpetrators of the harassment.

The financial cost of publishing and distributing a revised Title IX policy and procedure is not only *de minimis*, it is a cost anticipated by the Defendant's receipt of federal funds. 34 C.F.R. 106.4; see also *Davis*, 526 U.S. at 640 (citing *Pennhurst State School and Hospital v. Alderman*, 451 U.S. 1, 17 (1981): "'much in the nature of a contract[,] in return for federal funds, the States agree to comply with federally imposed conditions.'"). The administrative burden of granting the Plaintiff special consideration when deciding class composition does not cause Defendant to incur any additional costs. Thus, this factor weighs in favor of the Plaintiff.

### D. The Impact of Injunction on the Public Interest

The public interest weighs in favor of granting an injunction in that the relief sought is consistent with the Defendant's Title IX obligation to prevent, investigate, and remedy discrimination including sexual harassment.

   1. *Granting the Injunctive Relief Sought Serves the Best Interest of Defendant's Students and Their Families.*

The principal purposes of Title IX are to (1) avoid the use of federal funds to support discriminatory practices, and (2) provide individual citizens effective protection against those practices. *Gebser v. Lago Vista Indep. Sch. Dist*. 524 U.S. 274 (1998). Sexual harassment is a form of discrimination for purposes of Title IX. *Id*., at 281; see also *Davis*, 526 U.S. 629, 649-50. The most common form of relief sought and obtained under Title IX is an injunction ordering a covered entity to take certain action. *See Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).

Granting the injunctive relief sought serves the public interest in that it would accomplish Title IX's purpose of providing effective protection against sexual harassment that has limited Plaintiff's ability to participate in and benefit from Defendant's educational programs and activities.

Furthermore, Plaintiff is not alone in suffering from harassment at the hands of her classmates. On at least two occasions Plaintiff's two friends complained to Defendant about sexual harassment. And in its May 2018 volume of the student publication *Paper Cuts*, Defendant published an anonymous piece titled "What Everybody Knows, But Never Talks About." The piece details unspecified bullying and harassment that leaves the writer afraid, "barely hanging on," and "wish[ing] to die."

Defendant's failure to comply with Title IX has left the Plaintiff, as well as her classmates, without effective protection against sexual harassment and bullying that limits their ability to participate in and benefit from Defendant's educational programs and activities. This factor weights in favor of the Plaintiff in that the injunctive relief sought serves the public interest by requiring Defendant to publish and distribute a revised Title IX policy and procedure, and to enjoin the placement of the three main perpetrators in the same classroom as Plaintiff at all times going forward.

23

V.      **CONCLUSION**

Between November 1, 2017 and March 7, 2018, when she was sexually assaulted, Plaintiff reported harassment over a dozen times to at least a half-dozen school officials.  By June 1, 2018, the harassment had become sufficiently severe and pervasive such that Plaintiff was forced to miss school, leave class early, or leave school early almost 40 times.

The Defendant's inconsistent and ineffective response constitutes "deliberate indifference" in violation of Title IX.  Prior to November 2017, Plaintiff was a confident, outgoing, and successful student who participated in choir, theater, cheerleading, and mentor group among other extracurricular activities.  Plaintiff now suffers from general anxiety disorder and rumination, and cannot be on Defendant's campus without the risk of suffering a panic attack.  Plaintiff has been advised to begin taking anti-anxiety and anti-nausea medication, and she will require psychotherapy for years to come.  All this because the Defendant failed to comply with Title IX, and then acted with deliberate indifference to Plaintiff's cries for help.

Respectfully Submitted,

/s/ Bennett P. Allen
Bennett P. Allen (96031)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
P: (513) 287-6992
F: (513) 721-1178
ballen@econjustice.com
*Trial Attorney for Plaintiff*

/s/ David M. Cook
David M. Cook (23469)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
P: (513) 287-6980
F: (513) 721-1178
dcook@econjustice.com
*Co-Counsel for Plaintiff*