## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **T.W. and K.W. as Parents and Legal Guardians of JANE DOE, a Minor** | ) | **Case No. 1:18-cv-668** |
| | ) | |
| | ) | **Judge Timothy S. Black** |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **FINNEYTOWN LOCAL SCHOOL DISTRICT, FINNEYTOWN LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, and GRANT ANDERSON, LAURIE BANKS, RHIANA BLAUGHER, JENNIFER DINAN, DOUGLAS DIRR, DOUGLAS LANTZ, ALLISON McCREA, CATHY McNAIR, FRANK McPHERSON, ERIC MUCHMORE, TERRI NOE, JANE ROE, MARLO THIGPEN, and NICHOLAS TIPPENHAUER individually and in their official capacities,** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | **CORRECTED AMENDED** |
| | ) | **COMPLAINT FOR INJUNCTIVE** |
| **Defendants.** | ) | **RELIEF AND JURY DEMAND** |
| | ) | |

Plaintiff Jane Doe, for her Corrected Amended Complaint, states the following:

## PRELIMINARY STATEMENT

1. Plaintiff hereby corrects her Amended Complaint (Doc. #12) by adding Emily Styles as a defendant listed in the case caption,[1] and by naming the defendant Grant Anderson instead of Anderson Grant. Plaintiff further corrects her Amended Complaint by removing Defendant "FLSD Board of Education" from Count VII and Count VIII pursuant to the Court's Order Granting Defendant's Partial Motion to Dismiss (Doc. #10).

---

[1] *See* ¶¶ 28 and 29; *see also* Count IX.

2.   This action alleges Defendant failed to take immediate and appropriate steps to investigate sex-based harassment and assault, and that Defendants failed to take prompt and effective steps to end the harassment once on notice the misconduct had become sufficiently severe so as to deny Plaintiff access to Defendant Finneytown Local School District's educational programs and activities, in violation of Title IX of the Education Amendments of 1972 ("Title IX") 20 U.S.C. § 1681 *et seq*., 42 U.S.C. § 1983, as well as in violation of Title 27 and Title 33 of the Ohio Revised Code ("R.C.").

## **PARTIES**

3.   Plaintiff is a 14-year-old girl who resides in Cincinnati, Ohio and who, at all times relevant to this action, was a student in the Defendant Finneytown Local School District ("FLSD").

4.   FLSD is, and was at all times relevant to this action, a public-school district incorporated under the laws of the State of Ohio.

5.   FLSD receives federal funds, for purposes of establishing Plaintiff's standing to sue under Title IX, and has its principal place of business at 8916 Fontainebleau Terrace, Cincinnati, Ohio 45231.

6.   Defendant FLSD Board of Education is the governing body for FLSD.

7.   FLSD and Defendant FLSD Board of Education are hereinafter collectively referred to as the FLSD Defendants.

8.   At all material times, Defendant Terri Noe, in her official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of her employment and within the scope, course, and authority of her employer.

9.   At all material times, Noe was the Superintendent of FLSD.

10. At all material times, Defendant Dr. Laurie Banks, in her official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of her employment and within the scope, course, and authority of her employer.

11. At all material times, Banks was one of two Title IX compliance officers for FLSD.

12. At all material times, Defendant Douglas Lantz, in his official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of his employment and within the scope, course, and authority of his employer.

13. At all material times, Lantz was one of two Title IX compliance officers for FLSD.

14. At all material times, Defendant Grant Anderson, in his official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of his employment and within the scope, course, and authority of his employer.

15. At all material times, Anderson was the Principal of FLSD's Whitaker Elementary.

16. At all material times, Defendant Marlo Thigpen, in his official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of his employment and within the scope, course, and authority of his employer.

17. At all material times, Thigpen was the Assistant Principal of FLSD's Whitaker Elementary.

18. At all material times, Defendant Douglas Dirr, in his official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of his employment and within the scope, course, and authority of his employer.

19. At all material times, Dirr was a teacher at FLSD's Whitaker Elementary.

20. At all material times, Defendant Jennifer Dinan, in her official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of her employment and within the scope, course, and authority of her employer.

21. At all material times, Dinan was the Principal of FLSD's Secondary Campus.

22. At all material times, Defendant Eric Muchmore, in his official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of his employment and within the scope, course, and authority of his employer.

23. At all material times, Muchmore was the assistant principal or dean of students at FLSD's Secondary Campus.

24. At all material times, Defendant Allison McCrea, in her official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of her employment and within the scope, course, and authority of her employer.

25. At all material times, McCrea was a teacher at FLSD's Secondary Campus.

26. At all material times, Defendant Nicholas Tippenhauer, in his official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of his employment and within the scope, course, and authority of his employer.

27. At all material times, Tippenhauer was a teacher at FLSD's Secondary Campus.

28. At all material times, Defendant Emily Styles, in her official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of her employment and within the scope, course, and authority of her employer.

29. At all material times, Styles was a school counselor at FLSD's Secondary Campus.

30. At all material times, Defendant Rhiana Blaugher, in her official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of her employment and within the scope, course, and authority of her employer.

31. At all material times, Blaugher was a teacher at FLSD's Secondary Campus.

32. At all material times, Defendant Cathy McNair, in her official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of her employment and within the scope, course, and authority of her employer.

33. At all material times, McNair was a social worker at FLSD's Secondary Campus.

34. At all material times, Defendant Frank McPherson, in his official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of his employment and within the scope, course, and authority of his employer.

35. At all material times, McPherson was the school resource officer at FLSD's Secondary Campus.

36. At all material times, Defendant Jane Roe, in her official capacity, was an agent and or employee of FLSD, acting or failing to act within the scope, course, and authority of her employment and within the scope, course, and authority of her employer.

37. At all material times, Roe was a school resource officer at FLSD's Secondary Campus.

## JURISDICTION AND VENUE

38. This action is brought pursuant to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq*.

39.  This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.

40. Subject matter jurisdiction is based on 28 U.S.C. § 1331, which grants district courts jurisdiction over all civil actions arising under the Constitution, laws and treaties of the United States.

41. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any

person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

42. Plaintiff's claims are cognizable under the United States Constitution, 42 U.S.C. § 1681 *et seq*., as well as and under Title IX.

43. The events giving rise to this lawsuit occurred in Hamilton County, Ohio, which sits in the Western Division of the Southern District of Ohio.

44. Venue is proper in the United States District Court for the Southern District of Ohio, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to Plaintiffs' claims occurred.

## **FACTS**

45. Plaintiff Jane Doe was a seventh-grade student at FLSD's secondary campus in September 2018, and she has been an FLSD student at all material times.

46. The sexual harassment at issue in this case began during the 2016-2017 school year when Plaintiff was in fifth grade at FLSD's Whitaker Elementary. Male classmates directed at the Plaintiff crass jokes and comments of a sexual nature and dared each other to touch female classmates' breasts or buttocks. Plaintiff reported the misconduct to Teacher Douglas Dirr and advised him that the boys were making her uncomfortable. Dirr never did more than send the perpetrators out of the classroom.

47. In fall 2017, Plaintiff transitioned from Whitaker Elementary to FLSD's Secondary Campus for sixth grade.

48. Within two weeks of starting sixth grade, the same boys Plaintiff complained about in fifth grade resumed their crass jokes and comments, which were now accompanied by lewd gesticulations, grunting, moaning, mimicking oral sex, and pornographic images and video.

49. Plaintiff reported this conduct to other teachers, including Allison McCrea and Nicholas Tippenhauer, on several occasions.

50. The response from Plaintiff's teachers was inconsistent, if her teachers responded at all.

51. McCrea kept a record of incidents, but never took disciplinary action during class.

52. Tippenhauer never took action. Instead, he would say, "I have to pick my battles."

53. Prior to November 2017, Plaintiff was a confident, outgoing, and successful student who participated in choir, theater, cheerleading, and mentor group among other extracurricular activities.

54. In early November 2017, Plaintiff reported to FLSD Secondary Campus School Counselor Emily Styles and School Resource Officer (SRO) Frank McPherson that several male classmates were making her uncomfortable with sexually explicit jokes and comments, lewd gesticulations, and threats of unwanted touching.

55. On November 15, 2017, Plaintiff contacted her mother saying she was scared and hurting, and that she wanted to come home from school because the same boys were showing her and others pornographic images. The next day, again Plaintiff reported the matter to Styles, and again she named the boys involved and described what they were doing. Neither Styles nor any other FLSD staff took any discernable action.

56. By December 2017, the lewd remarks and jokes, the sexually suggestive gestures, and the threats of unwanted touching had not stopped, and now were being directed at Plaintiff on an ongoing and daily basis.

57. The harassment became so severe that on December 14, 2017, Plaintiff texted her mother to say she had become physically ill from what the boys were saying and doing. Her father left work, picked her up from school, and took her home because she could not go back to class.

58. In early January 2018, Plaintiff along with two friends went as a group to report misconduct by the same boys to Teacher Rhiana Blaugher. Blaugher said she would report it to SRO McPherson. If she did, McPherson never contacted Plaintiff, or either of her friends, to question them. Instead, a week later McPherson spoke to Plaintiff's entire class about sexual harassment.

59. After the class meeting, the harassment only got worse, and again the three girls went to Blaugher, reported the harassment, and again named the boys who were engaging in the behavior. Blaugher told them she would again report it to SRO McPherson.

60. Shortly thereafter, Plaintiff's mother contacted Defendant FLSD's main office to express her concerns that the harassment was escalating and becoming increasingly aggressive, and that she feared it could become physical. Plaintiff's mother was never put in touch with the principal, a Title IX coordinator, or anyone else with the authority to take prompt and appropriate action.

61. The week ending January 26, 2018, the FLSD Secondary Campus held a meeting of the entire sixth grade to discuss sexual harassment. Girls and boys were split into separate meetings, and a guest speaker discussed harassment and advised the students of potential legal consequences. The harassment stopped for a couple days, but then resumed worse than before.

62. On March 1, 2018, the harassment again forced Plaintiff to seek help from her teachers because the same boys kept saying, "You want this," while thrusting their hips at her mimicking sexual intercourse. McCrea walked with Plaintiff to report the matter to Dean of Students Eric Muchmore, but he was not in his office, so they left a note. Muchmore never contacted Plaintiff regarding the note.

63. On March 5, 2018, again the harassment forced Plaintiff to seek help from school officials. Again Plaintiff reported the matter to McCrea, who told her to report it to the SRO, Mr. McPherson. But when Plaintiff went to see Mr. McPherson, he was not in his office. That same day, Plaintiff's mother called the school and left a message for FLSD Secondary Campus principal Jennifer Dinan, but she never received a return call. Ms. Dinan has yet to contact Plaintiff's parents as of the date of filing this Complaint.

64. On March 7, 2018, Plaintiff's worst fears were realized when one of the boys approached her and intentionally rubbed his genitals against the side of her leg and against her rear end. She went immediately to report the incident to SRO McPherson, but instead of McPherson, a female officer, Jane Roe, was there. Plaintiff told Roe, "He rubbed himself against me." Instead of asking for the perpetrator's name, and for details regarding the assault, Roe asked, "Are you sure this boy doesn't just like you?" Roe asked Plaintiff to reenact what happened, then repeated several times her question about whether the perpetrator "liked" her.

65. After reporting the assault and getting no help from Roe, who sent her back to class with the perpetrator, Plaintiff tried but could not reenter the classroom. Teacher Laura Thompson let Plaintiff sit in the hall and spoke with her while she sobbed uncontrollably. Plaintiff's grandmother came to the school, picked her up, and took her home. When she arrived home, Plaintiff broke down completely while describing the assault to her mother and grandmother. The perpetrator was not even removed from class – Roe and FLSD staff did nothing. They did not even contact Plaintiff's parents to notify them she had been assaulted.

66. After Plaintiff returned home following the assault, her mother called the school, but by that time it was after hours so she had to leave a message. The following day, March 8, 2018, after leaving several more messages with no response, Plaintiff's mother called Principal Jennifer

9

Dinan's office. The administrative assistant who answered the phone said she was in the office the day before when Plaintiff arrived looking distraught. Despite having observed Plaintiff visibly distraught, no one associated with FLSD bothered to take her mother's call despite her several attempts and several voicemails.

67. SRO McPherson returned Plaintiff's mother's call and told her he was aware of the incident. However, McPherson said he did not consider the incident to be an assault, and disclosed that he had done nothing more than speak to the perpetrator despite having received reports of sexual harassment from more than one teacher regarding this same perpetrator and his friends.

68. SRO McPherson also told mother he was not responsible for disciplining students, so mother told McPherson she wanted to raise the issue beyond his station, and she asked him to have Principal Dinan call her. Dinan never called.

69. Instead, the FLSD Secondary Campus Dean of Student Eric Muchmore called, and he was horrified to learn the Plaintiff had been assaulted. He promised a meeting would be called the next morning.

70. Meanwhile, Plaintiff was distraught. She felt nauseous, could not eat or sleep, and cried all night until finally she fell asleep around 3:00 a.m.

71. The following day, March 9, 2018, Muchmore called Plaintiff into his office then called her mother by phone. Muchmore said he wanted to "get this on record," and he presented Plaintiff with two options: (1) she could report the harassment and assault anonymously, or (2) she could enter into a cease-and-desist order mutually binding on her and her victimizers.

72. Muchmore informed Plaintiff the order would prevent the boys from harassing her, that the parties were not to have any contact with each other, and that she would be subject to discipline if she violated the order. Muchmore also informed Plaintiff the order was not to be disclosed – by

the boys or by her – to any other students. Seeing no other option to stop the harassment, Plaintiff signed the order.

73. By the time Plaintiff returned to class following her meeting with Muchmore, the same boys responsible for the continued harassment had already signed the non-disclosure provision, yet told their friends about the order. Those friends then began harassing the Plaintiff yelling across the room, "He didn't touch you," "You don't even have boobs," and calling her a snitch. One boy told Plaintiff she should kill herself. Teacher McCrea did nothing more than urge the class to "settle down." Plaintiff put her head down on her desk trying to ignore the harassment, but she could not take it and ran out of the room crying.

74. Plaintiff went immediately back to Muchmore and told him she was now being harassed not by the boys who signed the cease-and-desist order, but by their friends. Incredibly, Muchmore told her there was "nothing [he] could do" because the boys harassing her had not violated the order. Plaintiff was shattered. She went to SRO McPherson's office crying and hyperventilating, and she called her dad to come pick her up.

75. When Plaintiff's father arrived, he tried to meet with Muchmore, but Muchmore refused to see him because he was "busy."

76. Once back home Plaintiff cried unconsolably, she continued hyperventilating, and was soon suffering from her first panic attack.

77. That night, Plaintiff's mother began researching Title IX. Neither Plaintiff nor her parents ever received a copy of an FLSD non-discrimination policy, they were not informed of the identity of FLSD's Title IX coordinator, nor could Plaintiff's mother find any such information on FLSD's website.

78. FLSD's administrative staff was notified each time Plaintiff needed to leave school early, and the staff authorized Plaintiff's release into her parent's custody.

79. From March 12 to March 14, 2018, Plaintiff stayed home from school due to increased heart rate, nausea, and vomiting suffered each morning while preparing for school.

80. On March 14, 2018, Plaintiff's family physician diagnosed her with general anxiety disorder (GAD).

81. On March 15, 2018, Plaintiff returned to school. Circa 8:50 a.m., a classmate told Plaintiff to kill herself, but she does not know who. She felt nauseous, her heart was racing, and she was having difficulty breathing. Plaintiff's father took her home from school around 10:15 a.m.

82. From March 19 to March 21, 2018, Plaintiff stayed home from school due to morning panic attacks. Plaintiff was also suffering ongoing and having trouble sleeping, so her family physician recommended Melatonin.

83. Each day she missed school, Plaintiff's absence was communicated to FLSD Secondary Campus by her mother, who would call the school and explain that her daughter had to miss school because of sexual harassment that was causing anxiety and panic attacks.

84. On March 23, 2018, Plaintiff returned to school, but a classmate shoved her from behind. She panicked and began vomiting. Plaintiff went to the school nurse who said the vomiting was caused by anxiety and panic, and that it would be best for Plaintiff to go home for the day. Her father picked her up around 9:30 a.m. That same day, FLSD staff told Plaintiff's mother that the school officials' schedules would not "align" for everyone to meet until April 6.

85. Plaintiff was on spring break from March 24 to April 2, 2018, but when she returned to school on April 3, 2018, Plaintiff became nervous and suffered a panic attack because she did not feel safe. She was unable to remain at school, and her father picked her up around 9:10 a.m.

86. On April 6, 2018, Plaintiff's parents met with Principal Jennifer Dinan, Assistant Principal Marlo Thigpen, Styles, Muchmore, and School Social Worker Cathy McNair. As if first learning of a problem that had just come to light, Dinan asked, "Would it help for [Plaintiff] and the boys to sit down together and talk it out?" Plaintiff's parents were outraged. Muchmore and Styles agreed it was not a good idea.

87. During the April 6, 2018 meeting, Plaintiff's parents described the severity of the situation and how it was affecting their daughter's health. They explained their family physician has diagnosed Plaintiff as now suffering from general anxiety disorder (GAD) with panic attacks brought on by stressors related to the sex-based harassment. They shared their doctor's explanation that Plaintiff's body was reacting adversely to the events at school, and that the doctor taught Plaintiff breathing techniques and had prescribed Prozac.

88. After detailing this information, the only proposition FLSD staff came up with was to move Plaintiff to another class. This was Muchmore's proposition, to which he added the disclaimer that he could not guarantee Plaintiff's safety.

89. FLSD staff never proposed moving the perpetrators to another class.

90. FLSD staff never contacted the perpetrators parents or guardians.

91. And citing the perpetrators' rights to privacy, FLSD staff never disclosed whether any of them had been disciplined, or whether the boy who assaulted Plaintiff had been disciplined.

92. During the April 6, 2018 meeting, Plaintiff's parents asked to speak with FLSD's Title IX coordinator. No one in the meeting knew the Title IX coordinator's name. Social Worker Cathy McNair left the room to find out and returned with nothing more than a one-page handout

published by the U.S. Department of Education, Office for Civil Rights, titled, "Know Your Rights."[2]

93. After the April 6, 2018 meeting with Defendant, Plaintiff's parents met with Styles to discuss Plaintiff's Section 504 Plan. Initially implemented to address an unrelated illness, Plaintiff's father explained to Styles that because of the ongoing harassment Plaintiff now suffers from GAD, which was causing panic attacks almost every morning before school. Dismissing the connection between the harassment and the anxiety, Styles told father, "That's all in the past, and we need to move forward." It was agreed that as part of the 504 Plan, Plaintiff would be permitted to leave school at lunch because it was in her afternoon classes that she would encounter the perpetrators.

94. On April 10, 2018, Plaintiff was determined to be at school the entire day. However, shortly after lunch, one of her classmates punched her in the face. He thought they were roughhousing, and the blow was accidental, nonetheless Plaintiff suffered an immediate panic attack. Plaintiff's father again left work and picked her up from school. By that time her panic attack had subsided, but it started again that evening. After dinner, Plaintiff started vomiting, and for the next several days she was physically ill. She had trouble eating, and when she did she would vomit soon after. Eventually Plaintiff could no longer hold down liquids either. Plaintiff did not attend school on April 11, 12, or 13, 2018, due to her panic attacks and physical illness.

95. On April 14, 2018, Plaintiff's father brought her to Cincinnati Children's Hospital Medical Center (CCHMC) where she was admitted the same day for dehydration and ongoing involuntary vomiting. The hospital performed an endoscopy and inserted a feeding tube. The endoscopy

---

[2] *See* Exhibit A: "Know Your Rights: Title IX Prohibits Sexual Harassment and Sexual Violence Where You Go to School."

showed no signs of this being an event related to her other illness, nor did it show any other physical ailments. The pain after the endoscopy was so severe Plaintiff required several doses of fentanyl.

96. Even with the feeding tube, Plaintiff was unable to keep anything down. Plaintiff remained in-patient at CCHMC for eight days. After discussion of the background and symptoms with CCHMC medical staff, doctors diagnosed her on April 17, 2018, with rumination (the focused attention on the symptoms of distress; rumination is associated with anxiety and stress), which was also causing Plaintiff's gastrointestinal track to shut down in response to "fight or flight" stressors.

97. In Plaintiff's case, doctors determined her stressor was the sex-based harassment and assault at school.

98. In the days that followed, Plaintiff's pain and stomach distention worsened, which led the hospital to do an x-ray of her bowels where they found fully impacted stool from her gastrointestinal tract having shut down. Over the next two days, Plaintiff took 2.5 gallons of GoLYTELY by way of her feeding tube, along with two other oral medications and a rectal suppository she inserted herself to trigger bowel movement.

99. When the laxatives finally started working, Plaintiff suffered stomach cramping, burning, and nausea. She became unable to control her bowels, which led to frequent accidents in her hospital bed, on the floor, a chair, in the shower, and even on the wall of her bathroom. She had to place a hat-shaped "catch basin" on the toilet to collect her bowel movements to be logged, and it often overflowed, adding to her humiliation.

100. Plaintiff met with a CCHMC therapist several times, but she remained unable to hold down any food until Friday, April 20, 2018.

15

101.     Plaintiff was released from CCHMC on April 21, 2018, but her frequent bathroom visits, accidents, and cramping continued for several days.

102.     Shortly after her release, Plaintiff began reporting to her parents suicidal ideation, and that she was unable to fall asleep alone because of frightening thoughts of harming herself.

103.     In its May 2018 volume of the student publication *Paper Cuts*, FLSD published an anonymous piece titled "What Everybody Knows, But Never Talks About."[3]  The piece details unspecified bullying and harassment that leaves the writer afraid, "barely hanging on," and "wish[ing] to die."

104.     On May 3, 2018 Plaintiffs parents and legal representatives met with FLSD's legal representative, Superintendent Terri Noe, and Title IX Coordinator Laurie Banks who admitted to having become involved only days earlier, on April 30, 2018.

105.     On May 10, 2018, Plaintiff's mother spoke with a representative at Beech Acres Parenting Center who said she received referral paperwork indicating only that Plaintiff "struggles with anxiety and going to school."  The Center's representative had not been told about the sexual harassment or assault.

106.     On May 14, 2018, FLSD staff arranged for Plaintiff to undergo "home instruction" on campus but away from other students, and on several occasions one of her parents stayed on campus in their car the entire time.

107.     On May 21, 2018, the home instructor advised Plaintiff's mother she had not been told about any sexual harassment or assault.  FLSD staff told the instructor only that Plaintiff was having anxiety about her schoolwork and going to school.

---

[3] *See* Exhibit B: "Paper Cuts" / Finneytown Literary Magazine / Season 1 Episode 2 / May 2018.

108.     On May 22, 2018, Plaintiff met with Dr. Jenna Reynolds at Queen City Counseling Services.  Dr. Reynolds recommended weekly therapy sessions, and advised she would use the same approach she takes with other patients who have suffered psychological trauma.

109.     From May 28 to June 1, 2018, Plaintiff was at school with her home instructor completing missed assignments in FLSD's administrative building away from the perpetrators, but also away from the classroom, her friends, and educational activities.

110.     On June 4, 2018, Plaintiff passed one of her perpetrators in an aisle at their local supermarket.  She suffered a panic attack and had to leave the store.

111.     Throughout June 2018, Plaintiff continued to suffer panic attacks, nausea, and vomiting.  On June 28, 2018, her physician advised the panic attacks and vomiting are hurting her stomach and prescribed Prevacid and Zofran.

112.     Plaintiff's seventh grade classes at FLSD began on August 21, 2018.  On August 22, 2018, Plaintiff missed a period-and-a-half at the end of the school day.  On August 23, 2018, Plaintiff's anxiety prevented her from sleeping, she had panic attacks and was vomiting much of the night, and she had to miss school August 24, 2018.

113.     On August 27, 2018, Plaintiff had an anxiety attack 10 minutes before first period was over and went to the nurse's office.  For 30 minutes she tried unsuccessfully to quell the attack, but her heart was still racing, and she was nauseous, so her parents picked her up and took her home from school.

114.     Plaintiff remains fearful of an encounter with the perpetrators in the hallway, while changing classes, or in the lunchroom, and her fear prevents Plaintiff from participating in Defendant's educational programs and activities.

**COUNT I:**
**Failure to Comply with Title IX**

17

**20 U.S.C. § 1681** *et seq.*
**(Against FLSD Defendants)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

115. The FLSD Defendants failed to distribute a non-discrimination notice, and failed to advise students, prospective students, parents, or employees of its Title IX coordinator's identity.

116. The FLSD Defendants failed to adopt and publish grievance procedures providing for prompt resolution of complaints, to ensure that members of the school community were aware of their rights under Title IX, and failed to ensure the school community was aware of how to file a complaint alleging a violation of Title IX.

117. The FLSD Defendants' failures constitute a *per se* violation of Title IX and left Plaintiff vulnerable to harassment and assault that has caused Plaintiff to forgo classroom instruction and extracurricular activities thereby limiting her ability to participate in, and benefit from, the Defendant's educational programs and activities.

118. The FLSD Defendants' Title IX violation has also caused Plaintiff pain and suffering including, but not limited to, humiliation, depression, and suicidal ideation.

**COUNT II:**
**Title IX Retaliation**
**20 U.S.C. § 1681** *et seq.*
**(Against FLSD Defendants)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

119. Title IX and its implementing regulations prohibit retaliation against any person who complains about what she reasonably believes to be a Title IX violation, who advocates on

18

behalf of Title IX rights and enforcement, and any person who cooperates in any investigation of a Title IX violation.

120.     Plaintiff engaged in Title IX protected activity by repeatedly reporting violations of Title IX.

121.     Plaintiff's actions were protected by the anti-retaliation provision of Title IX.

122.     Defendants retaliated against Plaintiff by removing her from the classroom instead of removing the perpetrators.

123.     Defendants took adverse action against Plaintiff by minimizing and diminishing the harassment and its effects, and by entering Plaintiff into a no-contact agreement.

124.     Defendants' adverse actions against Plaintiff were in direct response to, and were in retaliation for, the exercise of her rights under Title IX.

125.     Defendants' adverse retaliatory actions against Plaintiff violated Title IX and its implementing regulations.

126.     Defendants' retaliation constitutes a *per se* violation of Title IX and left Plaintiff vulnerable to harassment and assault that has caused Plaintiff to forgo classroom instruction and extracurricular activities thereby limiting her ability to participate in, and benefit from, the Defendants' educational programs and activities.

127.     Defendants' Title IX retaliation has also caused Plaintiff pain and suffering including, but not limited to, humiliation, depression, and suicidal ideation.

### COUNT III:
### Deliberate Indifference to Sexual Harassment
### 20 U.S.C. § 1681 *et seq.*
### (Against FLSD Defendants)

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

19

128.    Plaintiff is a young woman and as such a member of a protected class under state and federal law.

129.    Plaintiff's male classmates made sexually explicit jokes and comments, lewd gesticulations, and threats of unwanted touching based on gender, and their lewd remarks and jokes, their sexually suggestive gestures, and their threats of unwanted touching were directed at Plaintiff because of her gender. One classmate sexually assaulted Plaintiff because of her gender.

130.    Plaintiff reported the harassment to several school officials, and given the known circumstances, Defendants' acts and omissions in response to those reports constitute deliberate indifference to student-on-student sexual harassment, in violation of 20 U.S.C. § 1681 *et seq*.

131.    Defendants' deliberate indifference caused Plaintiff to forgo classroom instruction and extracurricular activities thereby limiting her ability to participate in, and benefit from, the Defendants' educational programs and activities.

132.    Defendants' deliberate indifference has also caused Plaintiff pain and suffering including, but not limited to, humiliation, depression, and suicidal ideation.

**COUNT IV:**
**Denial of Due Process**
**42 U.S.C. § 1983, Fifth Amendment, and Fourteenth Amendment**
**(Against Anderson, Banks, Dinan, Lantz, Muchmore, Noe, and Thigpen)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

133.    Defendants' failure to comply with the administrative requirements of Title IX deprived Plaintiff of her liberty interest in bodily integrity, and her property interest in an education, without due process of law, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

134.     Defendants subjected Plaintiff to violations of her liberty interest in bodily integrity, and her property interest in her education, by failing to adequately investigate Plaintiff's complaints, by failing to appropriately discipline the perpetrators, by failing to adequately train and supervise its staff with respect to the handling of Title IX complaints, and by its use of a cease-and-desist order, all of which created the danger that resulted in Plaintiff being harassed more severely and for a longer period of time than otherwise would have been the case.

135.      Defendants' denial of Plaintiff's constitutional right to due process caused Plaintiff to forgo classroom instruction and extracurricular activities thereby limiting her ability to participate in, and benefit from, the Defendants' educational programs and activities.

136.     Defendants' denial of Plaintiff's constitutional right to due process also caused Plaintiff pain and suffering including, but not limited to, humiliation, depression, and suicidal ideation.

**COUNT V:**
**Denial of Equal Protection**
**42 U.S.C. § 1983 and Fourteenth Amendment**
**(Against FLSD Defendants and Noe)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

137.     Based on information and belief, Defendants treat complaints of sexual harassment and sexual violence differently than complaints of bullying and fighting.

138.     Defendants knew, or should have known, that girls are more likely to suffer sexual harassment by a significant margin.[4]

---

[4] See, e.g., Catherine Hill and Holly Kearl, *Crossing the Line, Sexual Harassment at School*, American Association of University Women, 2 (2011), (https://www.aauw.org/files/2013/02/Crossing-the-Line-Sexual-Harassment-at-School.pdf).

139.     Defendants' disparate treatment of these complaints disparately impacts Defendants' female students in violation of Plaintiff's right to equal protection under the law.

140.     Defendants' denial of Plaintiff's constitutional right to equal protection under the law caused Plaintiff to forgo classroom instruction and extracurricular activities thereby limiting her ability to participate in, and benefit from, the Defendants' educational programs and activities.

141.     Defendants' denial of Plaintiff's constitutional right to equal protection under the law also caused Plaintiff pain and suffering including, but not limited to, humiliation, depression, and suicidal ideation.

## COUNT VI:
### *Monell* Liability for Failure to Comply with Title IX
### 42 U.S.C. § 1983
### (Against FLSD Defendants, Banks, Lantz, and Noe)

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

142.     Defendants were state actors working for FLSD, which is a federally funded school system.

143.     Defendants acted under color of law when they refused to thoroughly investigate Plaintiff's repeated complaints of sexual harassment, and refused to more severely discipline the perpetrators of the harassment, knowing that its efforts were ineffective in ending a clear and persistent pattern of harassment.

144.     The Defendants knew, or should have known, that they had a duty to respond to Plaintiff's complaints, and that their response must comply with federal law as outlined in Title IX's implementing regulations.

145.     Defendants' failure to comply with Title IX violated Plaintiff's right to due process and equal protection:

a.  By failing to provide a grievance procedure for students to file complaints of sexual harassment and or sexual assault;

b.  By failing to train its faculty, staff, and administrators as to their legal obligations under Title IX;

c.  By failing to take prompt and appropriate action to investigate Plaintiff's complaints of harassment and assault;

d.  By failing to take effective steps to end the harassment and prevent its recurrence;

e.  By failing to alter its approach to complaints of harassment once aware its efforts were ineffective; and

f.  By failing to notify Plaintiff of the disciplinary action taken against her victimizers.

146.    Defendants' failure to comply with Title IX amounts to an official policy of inaction.

147.    Defendants' official policy of inaction caused Plaintiff to suffer deprivation of her constitutional right to due process and equal protection of the law.

148.    Defendants' official policy of inaction caused Plaintiff to suffer humiliation, depression, and suicidal ideation that has limited her ability to participate in, and benefit from, the Defendant's educational programs and activities.

**COUNT VII:**
**Negligence**
**O.R.C. § 2307**
**(Against Defendants Banks, Lantz, and Noe)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

23

149.     Under the Ohio Revised Code ("R.C.") § 3313.666, Defendants had a duty to establish an anti-harassment and anti-bullying policy that (1) establishes a procedure for students to report misconduct; (2) establishes a procedure for documenting and responding to reported misconduct; (3) requires personnel to report misconduct to the school principal or other designated administrator; (4) requires parents or guardians of any student involved in the misconduct to be notified and have access to any written reports regarding the misconduct ; and that (5) establishes a disciplinary procedure for any student guilty of harassment, intimidation, or bullying.

150.     Under R.C. § 3313.666, Defendants had a duty to develop a strategy to protect the Plaintiff from harassment, intimidation, bullying, and retaliation.

151.     Defendants breached their duty under R.C. § 3313.666 (1) by failing to establish a procedure for Plaintiff to report misconduct; (2) by failing to establish a procedure for documenting and responding to reported misconduct; (3) by failing to require personnel to report misconduct to the school principal or other designated administrator; (4) by failing to notify the parents or guardians of the students involved in the misconduct; (6) by failing to provide Plaintiff's parents with access to any written reports regarding the misconduct; and (5) by failing to follow a disciplinary procedure for the students guilty of harassment, intimidation, and bullying.

152.     Defendants breached their duty under R.C. § 3313.666 to develop a strategy to protect the Plaintiff from harassment, intimidation, bullying, and retaliation.

153.     The breach of Defendants' duty under R.C. § 3313.666 constitutes negligence in violation of R.C. § 2307.

154.     Defendants' breach caused Plaintiff to forgo classroom instruction and extracurricular activities thereby limiting her ability to participate in, and benefit from, the Defendants' educational programs and activities.

155.     Defendants' breach has also caused Plaintiff pain and suffering in the form of humiliation, depression, and suicidal ideation.

**COUNT VIII:**
**Gross Negligence**
**O.R.C. § 2744.03**
**(Against Defendants Anderson, Dinan, and Noe)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

156.     Under Ohio law, a political subdivision is immune from liability for a personal injury that results from the exercise of judgment or discretion unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton and reckless manner.  R.C. § 2744(A)(6)(b).

157.     Under R.C. § 3313.666, a school district has the duty to report to the Ohio Department of Education substantiated complaints of sexual harassment and sexual violence on an annual basis.

158.     Defendants exercised its judgment and discretion in bad faith in that they did not promptly investigate Plaintiff's complaints, and did not take steps reasonably calculated to stop or remedy the harassment, with the dishonest purpose of avoiding state and federal reporting requirements, which would have tarnished Defendants' image in the eyes of prospective students and their parents.

159.     Defendants' bad faith left Plaintiff vulnerable to sexual harassment and assault, and caused Plaintiff to forgo classroom instruction and extracurricular activities thereby limiting her ability to participate in, and benefit from, the Defendant's educational programs and activities.

160.     Defendants' bad faith has also caused Plaintiff pain and suffering in the form of humiliation, depression, and suicidal ideation.

**COUNT IX:**
**Intentional Infliction of Emotional Distress**
**(Against Defendants Blaugher, Dinan, Dirr, McCrea, McNair, McPherson, Muchmore,**
**Roe, Styles, Thigpen, and Tippenhauer)**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

161.    Among other failings, Defendants failed to document, investigate, and report harassment and sexual assault; failed to timely meet with Plaintiffs' parents and or timely return their phone calls; and failed to timely notify the perpetrators' parents or guardians of their misconduct instead removing Plaintiff from the classroom, and having her sign a no-contact order subjecting her to the same punishment as her victimizers.

162.    Defendants knew, or should have known, its acts and omissions would result in serious emotional distress to Plaintiff.

163.    Defendants' acts and omissions were so extreme and outrageous as to exceed the bounds of decency and are completely intolerable in a civilized society.

164.    Defendants' acts and omissions caused Plaintiff pain and suffering in the form of humiliation, depression, and suicidal ideation.

**COUNT X:**
**Injunctive Relief**

Plaintiff incorporates all previous paragraphs and allegations as if fully rewritten herein and further states as follows.

165.    Plaintiff is entitled to injunctive relief under Title IX, 20 U.S.C. § 1681 *et seq*, and its implementing regulations 38 C.F.R. Part 23.

166.     Plaintiff seeks to compel Defendants to publish the name and contact information for the FLSD Title IX coordinator, and to post the coordinator's name and contact information in a conspicuous location on its website.

167.     Plaintiff seeks to compel Defendants to revise the FLSD Title IX policy and procedure to include a fixed complaint reporting process directing students to follow the same steps for each incident of harassment and discrimination.

168.     Plaintiff seeks to compel Defendants to revise the FLSD Title IX policy and procedure to include the use of a uniform complaint report form, a standardized investigative procedure, and a routine incident disclosure provision.

169.     Plaintiff seeks to compel Defendants to revise the FLSD Title IX policy and procedure to include a mandatory progressive discipline provision – applicable to all administrators, faculty, staff, and students – for all substantiated or confirmed reports of harassment, discrimination, or bullying.

170.     Plaintiff seeks to compel Defendants to revise the FLSD Title IX policy and procedure to include the release to a student-victim's parents a report regarding investigative findings, as well as the disciplinary, preventative, and remedial steps taken after it has substantiated or confirmed reports of harassment, discrimination, or bullying consistent with student privacy rights under 20 U.S.C. § 1232 and R.C. § 3319.321.

171.     Plaintiff seeks to compel Defendants to revise the FLSD Title IX policy and procedure to require that all substantiated or confirmed misconduct be reported to the Title IX coordinator, school principal, Ohio Department of Education, and the U.S. Department of Education, Office for Civil Rights, as required by law.

172.     Plaintiff seeks to compel Defendants to revise the FLSD Title IX policy and procedure to require notice to the parents or guardians of all students involved in any substantiated or confirmed misconduct.

173.     Plaintiff seeks to compel Defendants to publish and distribute to all FLSD administrators, faculty, staff, students, parents, and guardians the revised FLSD Title IX policy and complaint procedure and to post the policy and procedure in a conspicuous location on its website.

Based on the above, Plaintiff seeks judgment against the Defendants for injunctive relief, compensatory damages, punitive damages, reasonable attorney's fees, costs, and all other relief to which she may be entitled.

Respectfully Submitted,

s/ Bennett P. Allen
Bennett P. Allen (96031)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
P: (513) 287-6992
F: (513) 721-1178
ballen@econjustice.com
*Trial Attorney for Plaintiff*

David M. Cook (23469)
COOK & LOGOTHETIS, LLC
30 Garfield Place, Suite 540
Cincinnati, OH 45202
P: (513) 287-6980
F: (513) 721-1178
dcook@econjustice.com
*Counsel for Plaintiff*

Elizabeth K. Abdnour (81795)
ELIZABETH K. ABDNOUR, ESQ., PLLC

PO Box 27638
Lansing, MI 48909
P: (517) 292-0067
elizabeth@abdnour.com
*Co-Counsel for Plaintiff*

## **JURY DEMAND**

Plaintiff demands trial by jury as permitted under the Federal Rules of Civil Procedure upon all issues triable to a jury.

/s/ Bennett P. Allen
Bennett P. Allen