## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| T.W. and K.W. as Parents and Legal Guardians of JANE DOE, a Minor, | : | Case No. 1:18-cv-668 |
| | : | |
| | : | Judge Timothy S. Black |
| Plaintiffs, | : | |
| | : | |
| vs. | : | |
| | : | |
| FINNEYTOWN LOCAL SCHOOL DISTRICT, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S PARTIAL MOTION TO DISMISS

This case is before the Court on Defendants' partial motion to dismiss (Doc. 19)

(the "Motion to Dismiss") and the parties' responsive memoranda (Docs. 21, 25).

## I.    FACTS <u>AS ALLEGED</u> BY THE PLAINTIFF

<u>On a motion to dismiss, the Court views the complaint in the light most favorable

to Plaintiffs and takes all well-pleaded factual allegations as true.</u>  *Tackett v. M&G

Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).  The Court briefly summarized these facts

in its Order on Defendants' prior motion to dismiss. (Doc. 10).  Since then, Plaintiffs[1]

have added as defendants several school employees in their individual capacities and

additional claims against the Finneytown Local School District Board of Education ("the

Board").  (Doc. 17, as modified by Plaintiffs' notice of dismissal, Doc. 20).  Thus, a more

---

[1] "Plaintiffs" refers to Jane Doe and her parents T.W. and K.W. "Plaintiff" refers to Jane Doe.

detailed review of the <u>allegations</u> against each individual defendant is appropriate at this time.

Plaintiff Jane Doe was a student in the Finneytown Local School District ("FLSD"). (Doc. 17 at ¶ 3). Defendants are the FLSD Board of Education ("the Board") and several school employees. (*Id.* at ¶¶ 2-37). Starting in fifth grade, Plaintiff's male classmates subjected her to a pattern of sexual harassment. They made lewd comments, grotesque gesticulations, and, on one occasion, one of the boys sexually assaulted her.

In fifth grade, Plaintiff told her teacher Defendant Douglas Dirr that the boys were making her uncomfortable with their crude sexual jokes and threats of unwanted sexual touching, but Dirr only sent the boys out of the classroom. (Doc. 17 at ¶ 46).

In sixth grade, the same boys escalated to lewd gesticulations and confronting Plaintiff with pornography. Plaintiff reported the boys to her teachers Defendants Allison McCrea and Nick Tippenhauer. McCrea recorded the incidents but never acted on them. Tippenhauer, apparently acknowledging that the boys were troublesome, declined to act saying he had to "pick [his] battles." (Doc. 17 at ¶¶ 48-52).

In November and December 2017, Plaintiff also reported the boys to School Counselor Emily Styles and Defendant School Resource Officer ("SRO") Frank McPherson, but neither took any action, and the harassment, including threats of unwanted touching, continued daily. (Doc. 17 at ¶¶ 54-56).

In January 2018, Plaintiff and her friends reported the boys to Teacher Rhiana Blaugher. Blaugher said she would report them to SRO McPherson. This possibly led SRO McPherson to deliver a talk to Plaintiff's classroom. The harassment only worsened

after the talk, and Plaintiff and two friends again reported to the boys to Blaugher who again said she would report it to SRO McPherson. Plaintiff's mother also called and expressed her concern that the harassment was escalating and her fear that it could become physical. Plaintiff's mother called the main office though it is not clear with whom she spoke. Near the end of the month, the school convened the entire sixth grade class for a discussion about sexual harassment. (Doc. 17 at ¶¶ 58-61).

By March 2018, the harassment had resumed. On March 1, the boys told Plaintiff "you want this" while thrusting their hips at her. Plaintiff reported it to her teacher McCrea who walked Plaintiff to the office of Defendant Dean of Students Eric Muchmore. Muchmore was not in his office so Plaintiff left a note, but Muchmore never followed up with Plaintiff, nor apparently did he punish the boys. (Doc. 17 at ¶ 62). Four days later, Plaintiff went to McCrea again. This time, McCrea told Plaintiff to report the incidents to SRO McPherson, but McPherson was not in his office either. The same day, Plaintiff's mother called and left a message for Defendant FLSD Principal Jennifer Dinan. Dinan never called back. (*Id.* at ¶ 63).

On March 7, 2018, just two days after Plaintiff tried to find SRO McPherson and her mother tried to call Principal Dinan, one of the boys approached Plaintiff and rubbed himself against her leg and buttocks. She went to tell SRO McPherson but instead found a female SRO identified only as Defendant Jane Roe. Roe brushed aside Plaintiff's report with the outrageous suggestion that the boy simply "liked" Plaintiff. Distraught, Plaintiff went home but the boy was never punished. Again, Plaintiff's mother left several more voicemails at the school that went unreturned, though she was able to

determine that Principal Dinan was in the office when Plaintiff arrived there shortly after the incident.  *Id.* at 66.

The next day, SRO McPherson returned one of Plaintiff's mother's calls.  He disclosed that there had been several reports against the boy and that McPherson had talked to him, but that he did not think that the boy grinding his genitals on Plaintiff's body qualified as an assault. (Doc. 17 ¶¶ 67-68).

The next day, Dean Muchmore met with Plaintiff in his office.  Plaintiff's mother was on the phone.  Muchmore gave Plaintiff an option to either report the harassment and assault anonymously (the Amended Complaint is not clear whom it would have been reported to or for what purpose), or to sign a "cease-and-desist order."  Under the order, Plaintiff and the boys were forbidden to have any contact with each other and forbidden from disclosing the agreement to other students.  (Doc. 17 at ¶¶ 71-72).  The order apparently did not work.  As soon as Plaintiff went back to class, the boys broke the non-disclosure provision by telling their friends about it, and the boys' friends carried on harassing Plaintiff.  Plaintiff returned to Muchmore who refused to do anything about the new harassers, and then refused to meet with Plaintiff's father when he came to collect Plaintiff from school. (Doc. 17 at ¶¶ 74-75).

From there, Plaintiff's health began deteriorating. She suffered panic attacks that manifested in nausea and vomiting.  Her classmates' repugnant behavior only exacerbated Plaintiff's health when she tried to return to school. (Doc. 17 at ¶¶ 79-85).

On April 6, Plaintiffs finally met with Defendant Principal Dinan, Defendant Assistant Principal Marlo Thigpen, Defendant Dean of Students Muchmore, Student

Counselor Styles, and a social worker Defendant Cathy McNair.  Principal Dinan unhelpfully suggested that Plaintiff and the boys "talk it out," while Dean Muchmore proposed moving *Plaintiff* to a different class.  None of the school officials proposed disrupting the perpetrators' class schedules instead.  Nor did they ever contact the boys' parents or guardians.  The school officials refused to tell Plaintiffs if any of the perpetrators had been disciplined, citing, apparently, the boys' privacy rights.  Finally, no one could identify the school's Title IX coordinators. (Doc. 17 at ¶¶ 86-92).

Later in April, Plaintiff met with Student Counselor Styles.  Styles was separately acquainted with Plaintiffs through her work with them on Plaintiff's unrelated disability accommodation plan known as a Section 504 plan.  At the meeting, Styles and Plaintiff's father agreed that part of the Section 504 plan would be to permit Plaintiff to leave school in the afternoon which is when she typically ran into the boys.

Shortly after, Plaintiff's health collapsed.  She was hospitalized for more than a week, and she continued to suffer mentally and physically at least through August 2018. (Doc. 17 at ¶¶ 94-104).

By May 3, 2018, Plaintiffs had retained counsel.  They met with Defendants' counsel, the school's superintendent Defendant Terri Noe, and, for the first time, Title IX Coordinator Defendant Dr. Laurie Banks.  The Amended Complaint does not disclose the outcome of that meeting.  (Doc. 17 at ¶ 104).

Plaintiff continued to miss school because of anxiety and panic attacks at the start of her seventh grade year in August 2018.  (*Id.* at ¶ 112-23).  On September 21, 2018, Plaintiffs filed suit against Defendant.  (*See id.*).

Plaintiffs' Initial Complaint brought claims against FLSD as the sole Defendant. In granting Defendant's partial motion to dismiss, the Court recognized that a school district is not "sui juris" and therefore presumed that Plaintiffs intended to sue the FLSD Board of Education. (Doc. 10 at 1 n.3). Because a board of education is a political subdivision, the Court dismissed Plaintiffs' tort claims and claims for punitive damages. (Doc. 10 at 6). The Court explained, in part, that none of Plaintiffs' claims would entitle them to recover damages from a political subdivision, but that Plaintiffs would be permitted to amend their complaint to assert individual capacity claims.

On November 21, 2019, Plaintiffs filed their first amended complaint. (Doc. 12). Then on January 17, 2020, Plaintiffs filed a "corrected" amended complaint (hereinafter "Amended Complaint") adding an additional individual Defendant and correcting the name of another. (Doc. 17). Defendants filed their second motion to dismiss on February 3, 2020. And Plaintiffs then filed a notice of dismissal purporting to remove Grant Anderson, Rhiana Blaugher, Emily Styles, and the FLSD from the suit. (Doc. 20).

To review, because the names are hard to track, the remaining Defendants are:

1. Douglas Dirr, the earliest of Plaintiff's teachers identified in the Complaint who heard Plaintiff's complaint about the boys and sent them out of the classroom when she was in fifth grade. (Doc. 17 at ¶ 46).

2. Allison McCrea, Plaintiff's sixth grade teacher who recorded the incidents but did not act on them. She also walked Plaintiff to Dean Muchmore's office, and told Plaintiff to report the boys to SRO McPherson. (Doc. 17 at ¶¶ 48-52, 62-63).

3. Nicholas Tippenhauer, Plaintiff's other sixth grade teacher who declined to discipline the boys and told Plaintiff he had to "pick [his] battles." (Doc. 17 at ¶¶ 48-52).

4. Frank McPherson, the SRO who received Plaintiff's reports in late 2017, (Doc. 17 at ¶¶ 54-56), delivered a talk to Plaintiff's class, (Doc. 17 at ¶¶ 58-61), received Plaintiff's report about the boys again in January 2018, (*id.*), was absent when Plaintiff went to report the boys to him in March 2018, (*id.* at ¶ 63), and finally told Plaintiff's parents that he had heard other complaints about the boy who assaulted Plaintiff but that he was not responsible for student discipline and did not believe the incident was assault. (Doc. 17 ¶¶ 67-68).

5. Jane Roe, the female SRO who excused the behavior of the boy who sexually assaulted Plaintiff with the suggestion that he "liked her." (*Id. at* ¶ 66).

6. Eric Muchmore, the Dean of Students who was absent in March 2018 when Plaintiff went to report the boys to him and did not respond to the note Plaintiff left for him, (*Id.* at ¶ 63), but met with Plaintiff and her mother. In the meeting, Muchmore gave Plaintiff the option to either report the harassment and assault anonymously or to sign a "cease-and-desist order" that would bind Plaintiff and the problematic boys. (*Id. at* ¶¶ 71-72). He then refused to do anything when the boys apparently violated the order and refused to meet with Plaintiff's father. (*Id.* at ¶¶ 74-75). Muchmore was also present at the April 6 meeting and proposed moving Plaintiff to a different class. (*Id.* at ¶¶ 86-92).

7.  Jennifer Dinan, the school's principal who met with Plaintiffs once on April 6 and did not respond to repeated calls and voicemails from Plaintiff's parents. (*Id.* at ¶¶ 63, 86-92).

8.  Marlo Thigpen, the assistant principal who was present at the April 6 meeting. (*Id.* at ¶¶ 86-92).

9.  Cathy McNair, the social worker who attended Plaintiffs' April 6 meeting with school officials and provided a pamphlet about Plaintiffs' Title IX rights. (*Id.* at ¶¶ 86-92).

10. Laurie Banks who was a Student Services Director and one of two Title IX coordinators. She attended the May 3, 2019, meeting at which legal counsel was present. (*Id.* at ¶ 104).

11. Douglas Lantz who was one of two Title IX coordinators.

12. Terri Noe, superintendent of FLSD, who met with Plaintiffs and their legal counsel on May 3, 2019. (*Id.* at ¶ 104).

The Initial Complaint brought three tort claims: negligence under R.C. § 2307; gross negligence under R.C. § 2744.03;[2] and intentional infliction of emotional distress under Ohio common law ("IIED"). (Doc. 1 at ¶¶ 97–111). The Initial Complaint also requested punitive damages, (*Id.* at 22), and injunctive relief (Doc. 1 at ¶¶ 112-21). The parties also filed a stipulation that purported to dismiss the claims for injunctive relief that formed Count IX of the Initial Complaint. (Doc. 9, dismissing ¶¶ 112-21 of the Initial Complaint).

---

[2] As the Court explained, Plaintiffs cannot sue under R.C. § 2744.03, but the Court refers to the claim as it was styled in the Initial Complaint.

The Amended Complaint asserts several new claims, but in this motion, Defendants only seek to dismiss Counts I, VII, VIII, IX, and X (as well as all claims against FLSD).

     I.          Failure to comply with Title IX against the Board;

    VII.        Negligence against Banks, Lantz, and Noe;

   VIII.        Gross negligence, R.C. § 2744.03, against Dinan, and Noe;

    IX.        Intentional infliction of emotional distress against Dinan, Dirr, McCrea, McNair, McPherson, Muchmore, Roe, Thigpen, and Tippenhauer; and

    X.        Injunctive relief (despite having purported to dismiss it)

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Rule 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Thus, when determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.    ANALYSIS

Defendants move to dismiss all claims against the FLSD generally, and Counts I, VII, VIII, IX, and X. The Court considers each in turn.

### A.    Claims against FLSD

Plaintiffs concede in their response that they cannot, and did not intend to, bring any claims against FLSD. (Doc. 21 at 5). Plaintiffs also attempted to notice dismissal of their claims against FLSD after Defendants filed their motion to dismiss. (Doc. 20). Accordingly, all claims against FLSD are **DISMISSED**.

### B.      Count I - Failure to Comply with Title IX

In Count I, Plaintiffs assert a Title IX claim against the Board for failure to comply with Title IX's requirements codified at 20 U.S.C. § 1681 and implemented at 34 C.F.R. § 106.8.  (Doc. 17 at ¶¶ 114-15).  These requirements include that schools distribute non-discrimination notices that tell students, prospective students, parents, or employees who the Title IX coordinator is, what their rights are under Title IX, and how to register and resolve a complaint.

Defendants cite only *Gebser v. Lago Vista Independent School District*, 534 U.S. 274 (1998), for the proposition that "Title IX does not allow recovery in damages for violations of … [the statute's] administrative requirements."  (Doc. 19 at 8).  Plaintiffs, for their part, accept Defendants' reading of *Gebser*.  Accordingly, Plaintiffs claim they seek only to enjoin Defendants' non-compliance with Title IX's administrative requirements.

Plaintiffs are, of course, entitled to seek injunctive relief for the Board's failure to comply with Title IX.  *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979).  But, taking Plaintiffs at their word, Count I is encompassed within Count X, which also seeks to enjoin Defendants to revise FLSD's Title IX polices and publish information regarding its Title IX coordinators.  (Doc. 17 ¶¶ 165-73).  "As a matter of judicial economy, courts should dismiss claims that are duplicative of other claims."  *Wultz v. Islamic Republic of Iran,* 755 F. Supp. 2d 1, 81 (D.D.C. 2010).

Count X is therefore **DISMISSED** as duplicative.

### C.     Count VIII – R.C. § 2744.03

In Count VIII, Plaintiffs assert a claim they have titled "Gross Negligence" against Principal Dinan and Superintendent Noe under R.C. § 2744.03(A)(6). Count VIII attempts to strip Defendants Dinan and Noe of their immunity as employees of a political subdivision. Defendants mistake this count as identical to Plaintiffs' claim under § 2744.03(A)(5) in the Initial Complaint. It is not. Indeed, the Court warned about the difference between these two sections in its prior Order. (Doc. 10 at 9 n.10). While section 2744.03(A)(5) confers immunity on a political subdivision, section (A)(6) confers immunity on an employee of a political subdivision. A court assessing the immunity of a political subdivision applies a three-tiered analysis. But this three-tiered analysis "does not apply when determining whether an *employee* of the political subdivision will be liable for harm caused to an individual. … Instead, a court must utilize R.C. 2744.03(A)(6) to analyze immunity for claims against individual employees." *Thompson v. Buckeye Joint Vocational Sch. Dist.*, 2016-Ohio-2804, ¶ 26 (emphasis supplied). Under § 2744.03(A)(6), an employee of a political subdivision has immunity *unless* one of the exceptions in § 2744.03(A)(6)(a) through (c) apply. Here, Plaintiffs allege the exception under subsection (b) which removes an employee's immunity where the "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code Ann. § 2744.03(A)(6)(b). Section 2744.03(A)(6)(b), unlike (A)(5), <u>is</u> an exception to immunity. *Meyers v. Cincinnati Board of Education*, 343 F.Supp.3d 714, 730 (2018).

But Defendants are correct that R.C. § 2744.03(A)(6)(b) provides no independent basis for liability. Rather, it is an obstacle to liability that Plaintiffs must clear to pursue their state claims under Counts VII and IX. *See id.* The Court will consider allegations challenging Defendants' immunity in conjunction with Counts VII and IX.

Accordingly, Count VIII is **DISMISSED**.

### D.     Count VII - Negligence

In Count VII, Plaintiffs assert a negligence claim against Title IX coordinators Banks and Lantz and Superintendent Noe. The Amended Complaint cites Ohio Revised Code §§ 2307 and 3313.666. Defendants take issue with both citations. They argue that § 2307 offers no basis for liability, and § 3313.666(G) expressly "does not create a new cause of action or a substantive legal right for any person."

Plaintiffs concede their reference to R.C. § 2307 in the Amended Complaint was a mistake. As to R.C. § 3313.666, Plaintiffs insist that liability under Count VII is based on common law negligence and that R.C. § 3313.666 merely establishes a statutory duty that Defendants violated. *See, e.g.*, *Eisenhuth v. Moneyhon*, 161 Ohio St. 367, 372 (1954) (describing operation of negligence per se in Ohio). Defendants reply that Plaintiffs' failure to identify their claim as rooted in common law negligence is grounds for dismissal. (Doc. 25). But the Court need not be so rigid. Federal Rule of Civil Procedure 8(f) requires that "[a]ll pleadings shall be so construed as to do justice." Fed R. Civ. P. 8(f). The Sixth Circuit instructs that district courts "not rely solely on labels in a complaint, but that we probe deeper and examine the substance of the complaint."

13

*Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001). Here, the Court finds that the substance of Count VII is a common law negligence claim.

Defendants have not identified any obstacle to Plaintiffs pursuing a common law negligence claim this way. Instead, Defendants focus on their belief that this is a new argument. But Defendants can hardly be caught off guard. Plaintiffs' motion for preliminary injunction also presented their negligence claim, without any reference to § 2307, and argued, as they do here, that § 3313.666 merely establishes the statutory duty that Defendant allegedly breached. (Doc. 2 at 20). Furthermore, the facts in the Amended Complaint do adequately allege that R.C. § 3313.666 imposed certain duties on Defendants Banks, Lantz, and Noe, (Doc. 17 at ¶¶ 149-50), that Defendants breached those duties by failing to comply with the statute, (*id*. at ¶¶ 152-53), and that Defendants' breach caused Plaintiff's injury, (*id*. at ¶¶ 154-55).

On a motion to dismiss, a plaintiff is "not required to affirmatively demonstrate an exception to immunity … because that would require the plaintiff to overcome a motion for summary judgment in his complaint. Instead, a plaintiff is only required to allege a set of facts which, if proven, would plausibly allow him to recover." *Meyers v. Cincinnati Bd. of Educ.*, 983 F.3d 873, 880 (6th Cir. 2020). Plaintiff have done so.

Defendants' motion to dismiss Count VII is **DENIED**.

### E.    Count IX - Intentional Infliction of Emotional Distress

In Count IX, Plaintiffs assert an intentional infliction of emotional distress claim against Dinan, Dirr, McCrea, McNair, McPherson, Muchmore, Roe, Thigpen, and Tippenhauer. A claim for intentional infliction of emotional distress ("IIED") "requires a

showing of intentional or reckless, extreme and outrageous conduct that causes severe emotional distress." *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 731 (S.D. Ohio 2018), *aff'd*, 983 F.3d 873 (6th Cir. 2020). Under Ohio law, "[r]eckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 2012-Ohio-5711, ¶ 34. To survive a motion to dismiss, it is sufficient for a plaintiff to allege that as direct and proximate cause of Defendants' intentional, reckless and/or negligent infliction of emotional distress Plaintiffs have suffered severe humiliation, distress, depression, and anxiety." *Meyers*, 343 F. Supp. 3d at 731.

Taking Plaintiffs' allegations as true, the Court finds that Plaintiffs have adequately pleaded a claim for intentional infliction of emotional distress against Defendants Dinan, Thigpen, McPherson, Muchmore, and Roe, but not against Defendants Dirr, McCrea, McNair, or Tippenhauer.

Defendants Dirr, McCrea, and Tippenhauer were Plaintiff's teachers in fifth and sixth grade. Plaintiff alleges that she reported the boys' behavior to them and that they took, at most, mild disciplinary actions against the boys. But Plaintiff does not allege that any teacher knew the full extent of the boys' behavior, nor that they consciously disregarded the obvious risk of harm to Plaintiff. Moreover, the Court finds it implausible that any of the teachers were empowered to address the boys' behavior adequately. Likewise, Defendant McNair, though she attended the April 6 meeting,

would not plausibly have had authority to deal with the boys' behavior in her capacity as a social worker.

As to Defendants Dinan, Thigpen, McPherson, Muchmore, and Roe, Plaintiffs do allege facts that, taken as true, demonstrate each of these defendants knew the full extent of the harassment, and the extreme risk of emotional damage to Plaintiff, but consciously disregarded it when they failed to discipline the boys or take other specific actions to end the harassment.  In the weeks leading up to the sexual assault, these defendants were aware of the problem of sexual harassment in Plaintiff's grade.  SRO McPherson had given a talk to Plaintiff's classroom, and the entire sixth grade was convened for a special presentation on sexual harassment.  These events were not coincidental.  They were likely the Board's tepid response to Plaintiff's harassers.  They illustrate that the SROs and the FLSD administrators Dinan, Thipen, and Muchmore were aware of the boys' repellent behavior, but unwilling to address it directly.  And they had knowledge that the presentations to Plaintiff's classmates were ineffective.  Just days after the grade-wide presentation, Plaintiff and her parents tried to enlist Dean Muchmore's help after the boys thrusted their hips at Plaintiff, taunting "you want this."  (Doc. 17 at ¶ 62).  Muchmore ignored Plaintiff's note.  A few days later, the boys were harassing Plaintiff again.  She tried to get ahold of SRO McPherson, and her mother left voicemails with Principal Dinan.  Neither responded.  (*Id.* at ¶ 63).  Defendants had plenty of warning that the boys' behavior was becoming more aggressive.  Had any of these Defendants acted to stop the boys, as Plaintiffs begged them to do, Plaintiff would not have been sexually assaulted on March 7 which indisputably led to her extreme emotional distress.  As

alleged in the Amended Complaint, Defendants' failure to act is therefore extreme and outrageous. More alarming still is Defendant Roe's comment brushing aside the severity of the assault because the boy "liked her." Though the allegations against Roe are brief, the Court finds them sufficient to support a claim for IIED too.

Defendants Dinan, Thigpen, and Muchmore attended the April 6 meeting at which Plaintiffs described the severity of the harassment and the physical and emotion toll. Defendant Dinan's first suggestion was for Plaintiff to "talk it out" with the boys. Given that Plaintiff could not even pass the boys in a grocery aisle without suffering a panic attack, Dinan's suggestion was to effectively *induce* more emotional distress. Defendant Thigpen apparently had no suggestions and did nothing. Defendant McPherson had heard Plaintiff's complaints about the boys for months and knew about their behavior from other victims too. But, aside from a delivering a talk to Plaintiff's class (which only exacerbated the harassment), Defendant McPherson too failed to stop the behavior. And Defendant Muchmore, who had the most contact with Plaintiffs, acted recklessly in having Plaintiff sign a "cease-and-desist order" instead of reporting the incident or punishing the boys' directly, and then by refusing to enforce the order. He also refused to meet with Plaintiff's father which denied him the opportunity to take steps to prevent further emotional harm to his daughter.

Furthermore, Plaintiffs have adequately pleaded that at least Dinan, Thigpen, and Muchmore were positioned to implement the requirements of R.C. § 3313.666 but never did so. *Anderson v. Massillon*, 2012-Ohio-5711, ¶ 38 (breach of a statute may "constitute reckless disregard for the safety of those for whose protection it is enacted").

Defendants contend that this claim must be dismissed because Plaintiffs never allege that "any school official threatened, touched, assaulted, yelled at, or ridiculed Plaintiffs or their daughter." (Doc. 19 at 9).[3] That argument misses the point. A claim for IIED may be based on a defendant's *omissions* as well as her actions. Here, Plaintiffs have adequately alleged that each of the Defendants knew about the harassment Plaintiff was facing, and appreciated the severe emotional distress it threatened to cause her, yet failed to stop it.

Defendants also raise a statute of limitations defense in their motion to dismiss. The Court finds that the conduct underlying Plaintiffs' IIED claim is Defendants' reckless inaction regarding Plaintiff's harassers, and, therefore, the applicable statute of limitations for Plaintiffs' IIED claim is not one year, but four years. *Stafford v. Columbus Bonding Ctr.*, 2008-Ohio-3948, ¶ 15.

Defendants' motion to dismiss Count IX is **GRANTED** with respect to Defendants Dirr, McCrea, McNair, and Tippenhauer, but **DENIED** with respect to Defendants Dinan, Thigpen, McPherson, Muchmore, and Roe.

### F.      Count X – Injunctive Relief

Plaintiffs' Initial Complaint included claims for injunctive relief as Count IX. (Doc. 1 at ¶¶ 112–21). Plaintiffs sought identical relief in a motion for a preliminary injunction. (Doc. 2). In March 2019, Plaintiffs filed a joint stipulation ("the stipulation")

---

[3] This is the only claim against McPherson who is represented by separate counsel and did not join this motion to dismiss. In his answer, McPherson asked the Court to dismiss any claims against him for failure to state a claim. (Doc. 23 at 21–22). Here, then, the Court denies McPherson's request.

purporting to dismiss "Plaintiffs' equitable relief claims" and withdraw the motion for preliminary injunction. (Doc. 9). Counsel for both parties signed the stipulation and it did not purport to seek the Court's leave to dismiss the claims. *Id.* Plaintiffs, however, reasserted substantially the same claims for equitable relief in their Amended Complaint. (Doc. 17 at ¶¶ 165–73). Defendants now seek to dismiss these claims based solely on the stipulation. (Doc. 19 at 8). In response, Plaintiffs insist that they only ever bargained to dismiss Paragraph 113 of the Initial Complaint which would have enjoined Defendants from putting Plaintiff in the same class as her harassers. But that is not what the parties' stipulation said. (Doc. 9). The joint stipulation, that Plaintiffs' counsel filed, states plainly "that Plaintiffs' equitable relief claims, as set forth in Paragraphs 112-121 (COUNT IX) of Plaintiffs' Complaint, are Dismissed." (Doc. 9). Plaintiffs claim the filed stipulation is "mistakenly worded," such that "it can be read to have dismissed all claims" for equitable relief. (Doc 21 at 2). To show the wording was a mistake, Plaintiffs submit the "No-Contact Agreement" they executed with FLSD in which, indeed, Plaintiffs only agreed to "forgo their request for the injunctive relief described in paragraph 113 of the [Initial] Complaint filed in this matter." (Doc. 35, Ex. A.) Indeed, Plaintiffs did not seek this relief in their Amended Complaint. (Doc. 21 at 7). The Court is therefore left with a filed stipulation that purports to dismiss all claims for injunctive relief on one hand, and, on the other hand, a "No-Contact Agreement" that purports to dismiss only a claim for injunctive relief that would separate Plaintiff from her harassers.

Federal Rule of Civil Procedure 41 permits plaintiffs to voluntarily dismiss to "dismiss an action without a court order by filing … a stipulation of dismissal signed by

all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). Used properly, a plaintiff's notice of voluntary dismissal under Rule 41 is self-executing and requires no court approval. *Green v. Nevers*, 111 F.3d 1295, 1301 (6th Cir. 1997). Courts may, however, "decline to permit a voluntary dismissal when required to avoid short-circuiting the judicial process." *Philip Carey Mfg. Co. v. Taylor*, 286 F.2d 782, 785 (6th Cir. 1961). In the Sixth Circuit, the Rule permits plaintiffs to notice dismissal of only the entire controversy, not a portion of the claims. *Id.* Accordingly, "a Rule 41 notice purporting to dismiss only certain claims is ineffective." *See Malik v. F-19 Holdings, LLC*, No. CV 5:15-130-KKC, 2016 WL 2939150, at *4 (E.D. Ky. May 19, 2016). Where plaintiffs seek to dismiss only some of the claims in their complaint, the appropriate procedural vehicle is an amended complaint. Fed. R. Civ. P. 15; *see Barrientos v. UT-Battelle*, LLC, 284 F. Supp. 2d 908, 916 (S.D. Ohio 2003). For that reason, solicitous courts often, in their discretion, construe a Rule 41 notice that purports "to dispose of fewer than all claims against a defendant" as a Rule 15 motion for leave to amend. *Baker v. City of Detroit*, 217 F. App'x 491, 497 (6th Cir. 2007).

Here, the parties failed to specify which rule permitted their "Stipulation of Partial Dismissal and Withdrawal of Motion for Preliminary and Permanent Injunction." (Doc. 9). It is, however, styled as a Rule 41 notice. Consistent with Rule 41(a)(1)(A)(ii), it does not seek the Court's permission to dismiss Plaintiffs' equitable claims, Plaintiffs' counsel was responsible for filing it, and counsel for both parties signed it. Furthermore, no other rule of civil procedure appears to accommodate what the parties tried to do the way they tried to do it. Thus, the Court concludes that parties intended to dismiss

20

Plaintiffs' equitable claims under Rule 41. Because Rule 41 does not permit voluntary dismissal of fewer than all claims in a complaint, the Court treats the stipulation as ineffective.[4] Had the Court had occasion to address the stipulation when it was filed, the Court would have treated the stipulation as a motion for leave to amend, which was the appropriate method for Plaintiffs to dispose of particular claims in their complaint. As it happened, the Court *sua sponte* granted leave to amend at the conclusion of its Order granting Defendant's Partial Motion to Dismiss, (Doc. 10 at 10), so the Court had no reason to address the stipulation until this motion.

Accordingly, Defendants' motion to dismiss Count X is **DENIED**.

## IV.    CONCLUSION

Based upon the foregoing, the Motion to Dismiss (Doc. 19) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a.   Defendants' motion to dismiss all claims against FLSD is **GRANTED**, and those claims are **DISMISSED.**

    b.   Defendants' motion to dismiss Count I is **GRANTED**, and that claim is **DISMISSED.**

    c.   Defendants' motion to dismiss Count VII is **DENIED**, and that claim shall proceed.

---

[4] Even if the stipulation were effective, a signed stipulation of dismissal usually results in dismissal without prejudice. Fed. R. Civ. P. 41(a)(1)(B). If the parties wished to dismiss with prejudice, they needed to say so. Here, they did not. Thus, enforcing the stipulation as the parties wrote it would not prevent Plaintiffs from refiling their claims for injunctive relief.

d. Defendants' motion to dismiss Count VIII is **GRANTED**, and that claim is **DISMISSED.**

e. Defendants' motion to dismiss Count IX is **GRANTED** as to Defendants Dirr, McCrea, McNair, and Tippenhauer. Those Defendants are **DISMISSED.** The motion to dismiss Count IX is **DENIED** as to Defendants Dinan, Thigpen, McPherson, Muchmore, and Roe. Count IX shall proceed against these Defendants.

f. Defendants' motion to dismiss Count X is **DENIED.** That claim shall proceed too.

**IT IS SO ORDERED.**

Date:  11/16/2021 _____

_s/Timothy S. Black_ _____
Timothy S. Black
United States District Judge